# WHEELING.

## NATIONAL BANK *v.* NATIONAL BANK.

### July 13, 1874.

1874.
June Term.

1. Telegraphic dispatches are not privileged communications, but may be called for and given in evidence, whenever, in the opinion of the court, they are regarded as proper or competent testimony.

2. A dispatch, or the copy of a dispatch, purporting to have been written and sent by A B, as cashier, to C D, cannot be read in evidence, without first proving that it is a genuine paper, that is, that it was written and sent by the party whose name it bears.

3. The act of Congress passed the 3d day of March, 1869, making it unlawful for a national bank to certify checks, unless the drawer has, at the time, an amount of funds on deposit in said bank equal to the amount specified in the check, does not invalidate an oral acceptance of a check, or an oral promise to pay a check, there being at the time sufficient funds of the drawer in possession to meet it.

4. The said act of Congress does not invalidate a conditional acceptance of a check by a national bank having no funds of the drawer in its hands at the time, but that it will pay the same whenever a draft, left with it for collection by the drawer, and sufficient in amount for the purpose, shall have been paid.

Writ of error and *supersedeas* granted on the petition of the First National Bank of Wheeling to reverse a judgment of the circuit court of Ohio county, and award a new trial, in a suit therein pending, wherein the Merchants' National Bank of Wheeling was plaintiff, and said First National Bank of Wheeling defendant.

So many of the facts as are deemed material appear in the opinion of the Court.

The Hon. John Blair Hoge, judge of the third judicial circuit, presided at the trial below.

*C. W. B. Allison* for the appellant.

*Daniel Lamb* for the appellees.

PAULL, JUDGE:

This was an action of assumpsit brought by the plaintiff, on a check of which the following is a copy:

"WHEELING, W. VA., 24th Feby., 1871.

First National Bank of Wheeling,

Pay to S. Brady Esq., Cas., or bearer fifteen hundred dollars.

$1500.      A. C. QUARRIER, Treas."

There are two special counts in the declaration; the *first* setting forth the drawing of the check, and its presentation to and acceptance by the defendant, in consideration whereof the defendant undertook and promised to pay the plaintiff the amount thereof.

The *second* special count recites the making of the check; that the same was presented to defendant for acceptance, and that defendant promised to pay said check, as soon as it received information that a certain draft, of the Savings Institution of Wheeling, of which it was proved the said Quarrier was treasurer, upon —— of Alleghany county, Pennsylvania, had been paid, which last mentioned draft had been placed in its hands for collection; that defendant received information that said draft so left with it for collection had been paid, and the amount of, exceeding $1,500, was in fact paid to defendant, whereby it became liable to pay to the plaintiff the said sum of $1,500. The declaration also contains the usual common counts. With the declaration an account was filed for the amount of said check, which not being paid, was duly protested

The plaintiff demurred to the second special count in the declaration, in which there was a joinder by the defendant; and also filed the plea of non assumpsit. No action seems to have been had upon the demurrer, by the circuit court, but as there is no exception or complaint

disclosed by the parties on that account, we do not propose to take any notice of that fact.

At the May term of the circuit court, 1873, a jury was empanelled to try the issue, and rendered a verdict in favor of the plaintiff for $1,705: A motion for a new trial was made by the defendant, for the reasons assigned in the record, and for the matters set forth in defendant's bills of exception; this motion was overruled by the court, and judgment entered on the verdict; and from this action and judgment of the court, an appeal is now taken.

We now proceed to notice the grounds of the appeal, so far as it may seem proper or material for a right decision of the cause.

And *first*, the defendant excepted to the introduction of the testimony of John Morgan, Jr., the manager of the Western Union Telegraph office in the city of Wheeling who was asked to produce two specified telegraphic dispatches sent and received through said Telegraph Office, the first being a dispatch from the defendant's cashier, to J. D. Scully, the cashier of the First National Bank of Pittsburgh, in relation to the bill of exchange mentioned in the declaration, and which was alleged to have been paid; and the other being said Scully's reply thereto. It was objected that these were privileged communications; and that the second was not an original paper.

We are not prepared to approve the doctrine that has been advanced that telegraphic communications are privileged from disclosure, when a court shall have decided that they are proper testimony to promote the ends of justice. They are not necessarily confidential in their character, and if they were, they would not merely, for that reason, be protected. Letters passing through the mails are protected by act of Congress from being seized and opened for the purpose of furnishing testimony: They are protected for reasons of high public

1874.
June Term.

National Bank
v.
National Bank.

policy. But no such legislative enactment, state or national, shields the communications by the telegraph; the adoption of the principle would limit the field of inquiry after truth, in the investigation of human affairs, and would be introducing a new class of privileged communications unknown to the common law. When the legislative power can be so easily invoked, if reasons of sufficient moment can be made to appear for the purpose, it may be wiser and better for the courts to refrain from such a line of decision.

We think the objection made to the second communication, to-wit: that of John D. Scully to George Adams, defendant's cashier, well taken. There was no evidence before the court or jury whatever, that that was a genuine paper; that is, that it was written and sent by the party whose name it bears, and that he was the cashier of the Pittsburgh bank—material facts which must first be established, before the dispatch could be introduced as testimony. The evidence was incompetent and illegal, and its admission by the court erroneous.

The next ground of exception taken by the defendant, is to the instruction given by the court to the jury, at the instance of the plaintiff.

As we understand the evidence, that instruction, taking the first part in connection with the modification thereof, as given by the court, and designed as an independent instruction, is irrelevant to the issue before the jury, and should have been refused. It was to the following effect; that if the jury find that the acceptance of the check, if any, made by the defendant, was conditional, and that such acceptance was withdrawn or countermanded, at such time, and in accordance with such usages between the parties, as that checks, which had been accepted and paid by either party, could be returned, or the acceptance countermanded, and as a consequence, as we interpret the instruction, that no loss or damage could result from such withdrawal, the jury should find

for the plaintiff. With this understanding of the effect of the instruction, we do not think it was erroneous.

The *third* exception of the defendant is to the rejection by the court of the *three* instructions asked for, on its behalf, and which involve an application of the act of Congress, of March 3, 1869, in reference to certified checks. The act is very brief, and simply makes it unlawful for any officer of a bank to certify a check, unless the drawer has funds on deposit, at the time, equal to the amount specified in such check; and after declaring such check good, affixes a penalty for the violation of the act, subjecting the bank to the action of the government. With this act in view the defendant asks the court to instruct the jury, *first,* that in order to maintain the plaintiff's action, the jury must find, from the evidence, that the check sued upon was accepted, or certified, in writing. The instruction was refused, and we think properly. Can it be successfully maintained, and should it be established as a fixed principle, that because a statute prohibits, (to give it the greatest effect that can be claimed by defendant,) a bank from certifying a check, when the drawee has not in its possession an amount of funds equal to the amount specified in the check; that, therefore, a verbal acceptance or promise made, on its behalf, by a proper officer, to pay a check, when the drawer has an amount of funds in possession of the bank, sufficient for the purpose, is null and void, and cannot be enforced? We assume here, without argument, that it is sufficiently established, by both English and American authorities, that the conditional acceptance of a check, as also the oral acceptance of a check, or the oral promise to pay a check, are valid, and can be maintained. Because the bank must not in writing certify a check, when there are no funds of the drawer in its possession, therefore it shall not verbally agree to pay a check when there are funds in possession sufficient for the purpose; for this, at least, is implied in such an argument. This

would seem to be giving a strained and improper effect to the act of Congress.

The *second* instruction asked for involves the same mode or principle of construction. It recites that if the jury find that the check sued on, and given in evidence by the plaintiff, was taken by the plaintiff from the defendant, with the understanding that there was then no money of the drawer of the check, on deposit, in defendant's Bank, to pay the same, and that it was to be paid out of the proceeds of a claim of the drawer in the hands of the defendant, at Pittsburgh, and not yet collected or matured, and that the acceptance by the defendant, if any was made, was conditional upon the future collection or payment of such claim, then the plaintiff is not entitled to recover in this action. We think this instruction was properly refused. Because the act of Congress prohibits a bank from certifying a check, when the drawer has no funds, why should that invalidate a promise on its part, to pay a check, when the drawer shall have funds for the purpose, in its possession? This is but acting in accordance with the spirit of the act itself, refraining from making any promise, which is operative, until the bank is in the condition contemplated by the act. It is not seen how any interests of the bank are endangered by pursuing this course—Indeed such a promise seems to be implied in the very existence of the bank, and the nature of the business it transacts. It says to the public and customers, by the very laws of its being, I will pay all checks drawn upon sufficient funds of the drawer, in my possession, and such is its legal and moral obligation.

The *third* instruction involves the liability of the bank on an accepted or certified check, when the drawer had not funds in its possession equal to the amount specified in the check. We think this question does not arise upon the record. It does not present a state of facts to which the instruction can be applied. The claim of the plaintiff rests wholly, so far as the evidence indi-

cates, upon a conditional acceptance, if there was any acceptance whatever; giving the plaintiff the benefit of the evidence, in its strongest form, as stated by its principal witness, and it proves that the check was accepted to be paid only when the Pittsburgh draft should have been paid, and the defendant had no offsets. There is, therefore, no absolute certified or accepted check, given when there were no funds sufficient to meet it in the hands of the bank, presented for our consideration in this controversy; and it will be better, perhaps, to postpone a decision upon the validity of such a check, until the question is fairly presented.

The *fourth* instruction recites, if the jury find that the defendant did not accept the draft sued upon, and given in evidence by the plaintiff, either unconditionally or upon the single condition alleged in the declaration of the plaintiff, but did accept the same with conditions other, (or additional) than as set out in the declaration, the plaintiff cannot recover in this action. It is certainly true, that if the plaintiff proves another and substantially different contract than that upon which he declares, as a general rule, the variance will be fatal. This seems to be the effect of the instruction in question, and to it there seems no valid objection.

The only question remaining to be determined arises on the motion for a new trial, and which was overruled by the court. The grounds for this motion, as they stand connected, with the instructions given or refused by the court, have been already considered. The only remaining ground is connected with the evidence. The verdict is claimed to be against the evidence.

How far an appellate court will interfere in a question of this kind, may depend very much upon the frame of the bill of exceptions to the decision of the court below for a new trial. In the case of *Bennett v. Hardaway*, 6 Munf., 125, the court expressed its views as to the proper frame of such a bill, and declares that it should not state all the evidence given to the jury on the trial, but only the

facts appearing to the court to have been proved by the evidence. It was not regarded as competent for the appellate court to review and reverse the opinion of the court below, on a question touching the weight of the evidence and credit of the witness, and that if this were otherwise, it would have to do so "in the dark, or at least with lights inferior to those possessed by that court." But when the facts only are stated, it is competent for the appellate court to review and reverse the opinion of the court below founded on those facts; by doing which it does not depart from or overrule the decision of the latter court, as to the weight of testimony, or the credit due to any witness, nor bring the whole matter again into controversy. See judge Baldwin's opinion in *Patterson v. Ford*, 2 Gratt., 18, where the case of *Bennett v. Hardaway* is reviewed and sustained, and which has been recognized in all subsequent cases. He further says that a bill of exceptions is not properly taken, unless strictly confined to the *facts* proved by the evidence; for if any opening is left, by the introduction into it of evidence, as contradistinguished from the facts, the supposition that the cause may have turned before the jury upon the credit and weight of the evidence, and so have furnished room for the discretion of the court, the appellate forum will not interfere with what may have been an exercise of that discretion. To do so, would, he apprehends, much impair the value of jury trials.

Upon examining the bill of exceptions in the case before us, we find that it is of a mixed character; it certifies facts which were proved, and also certifies the evidence of the chief witnesses, as taken down, apparently, at the time of the trial, and which is spread out in the record. The jury passed upon the whole of the evidence, some of which is conflicting, as connected with the origin, at least, of this transaction. While citing these authorities, however, as to what has been heretofore regarded as the form and effect of bills of exception, the rule applicable to the case, as the evidence appears in the bill

of exceptions now before us, will be found in the case of *Carrington v. Goddin,* 13 Gratt., 587, where it was held, on a bill of exceptions to the refusal of the court to grant a new trial, because the verdict was contrary to the evidence, the evidence and not the facts proved, is stated; the court will reject all the parol evidence of the exceptor, and give full faith and credit to all the evidence of his adversary; and will not reverse the judgment, unless it then appears to be wrong. In. applying this rule, it will only be necessary to refer to a single particular. The plaintiff's right to recover, depended upon satisfactory proof of the payment of the Pittsburgh draft. The acceptance and payment of the check sued upon, was made conditional upon this fact, and it must, therefore, be fully established, by competent testimony. We find little or no testimony in the record tending to establish this indispensable fact, but the telegraphic dispatch purporting to have been sent by J. D. Scully of the Pittsburgh bank. But, as we have heretofore seen, this testimony is incompetent, and its introduction erroneous. Excluding this testimony, and there is no proper or stable foundation, on which the verdict of the jury can rest. It then appears to be wrong, and the judgment founded upon it erroneous.

It was error therefore in the circuit court to refuse to grant the motion for a new trial, and the judgment rendered on the 2d day of June, 1873, is reversed, and the verdict set aside, with costs to the appellant, and this case is remanded to the circuit court of Ohio county for a new trial to be had therein, in accordance with the principles herein set forth.

The other Judges concurred.

JUDGMENT REVERSED AND CAUSE REMANDED.