JOSEPH S. SMITH and WILLIAM P. WHITING, trading as SMITH AND WHITING vs. JAMES T. EASTON.

*Action on breach of promise to Endorse a note—Telegraphic messages—Which is the Original and which is the Copy—How their authenticity to be proven—Secondary proof—Telegraphic dispatch, a compliance with the Statute of Frauds—Promise to guarantee the debt of another—Failure of Consideration—Transaction which will not warrant an Attachment under the Act of 1864, ch. 306.*

An action will lie for the breach of a promise to indorse a note.

The message sent to a telegraph office to be transmitted in reply to one received, is the original, and not the message received at the place to which it is transmitted. The latter must be considered as a copy, and carries with it none of the qualities of primary evidence.

Ordinarily, the usual course is to show the delivery of the original message of the party sought to be charged, at the office from which it is to be telegraphed, and then show that it was transmitted and delivered at the place of its destination.

But even where the original is produced, its authenticity must be established. And this either by proof of the hand-writing, or by other proof establishing its genuineness.

The destruction of all the messages sent from the office on the day of its transmission, is sufficient foundation for the admissibility of secondary evidence. But this secondary evidence can only be admitted upon proof that the copy offered is a correct transcript of a message actually authorized by the party sought to be affected by its contents.

While the rule which permits a letter to be admitted in evidence against a party where there is no other proof of the hand-writing, except the fact, that in due course it had been received in reply to a letter which had been addressed to the same party, may apply to a dispatch in answer to a communication by letter, it is inappropriate to a dispatch received in reply to a communication received by telegraph.

Smith and Whiting *vs.* Easton.

A telegraphic dispatch .is a sufficient compliance with the Statute of Frauds, in its requirement that a promise to guarantee the debt of another should be in writing.

A promise to guarantee the debt of another already due, by indorsing his promissory note, is not only required to be in writing, in order to carry with it a liability to the payee, but it must also be supported by a consideration.

In an action upon such promise, where the consideration was the forbearance of the creditor to sue out process of attachment against the stock of goods of his debtor, and the proof showed that there was no ground for the process of attachment, it was HELD:

That there was an utter failure of consideration for the promise. The sale of goods in the usual mode of merchants to customers who come to his store to buy, is not a fraudulent disposition of them which will warrant an attachment against a resident debtor under the Act of 1864, ch. 306.

APPEAL from the Superior Court of Baltimore City.

The case is sufficiently stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the ten following prayers:

1. If the jury shall believe from the evidence, that William H. Easton was indebted to the plaintiffs in the sum of $531.38; and that plaintiffs' agent proceeded to the store of said William H. Easton, and was about to attach the stock of goods therein to satisfy said indebtedness, and that thereupon the said William H. Easton telegraphed to the defendant that the plaintiffs were about to seize the stock in his store, and inquiring what he should do, and thereupon the defendant telegraphed to the said William H. Easton, that he would endorse this Smith and Whiting's note at three months, and that said telegram was shown to the plaintiffs, and on the faith of it they did not attach said stock of goods, or proceed further against them; and that the note offered in evi-

dence was presented to the defendant for endorsement, and that he refused to endorse the same, then the plaintiffs are entitled to recover the amount of said note, with interest from the 23rd day of February, A. D. 1875; and there is evidence in the cause tending to show that the defendant sent the telegram purporting to come from him, in answer to the telegram purporting to come from William H. Easton, if they find that William H. Easton signed and transmitted the telegram to which his name is attached; and if they further find, that the last mentioned telegram was signed by William H. Easton, and delivered to the telegraph operator at Chesapeake City, to the proper address of the defendant, this is *prima facie* proof that the defendant received the same.

2. If the jury believe from the evidence, that William H. Easton was indebted to the plaintiffs in the sum of $531.38, and that in consideration that the plaintiffs would not attach the stock in said William H. Easton's store, the defendant promised to pay said indebtedness, and the plaintiffs consequently did not attach said goods, then the plaintiffs are entitled to recover.

3. If the jury believe from the evidence, that William H. Easton was indebted to the plaintiffs in the sum of $531.38, and that in consideration that the plaintiffs would not attach the stock in said William H. Easton's store, the defendant promised that he would endorse William H. Easton's note for that amount, in favor of the plaintiffs, at three months, and the plaintiffs, in consideration of said promise, did not attach said goods, and the note offered in evidence was sent to the defendant, who refused to endorse the same, then the plaintiffs are entitled to recover.

4. If the jury shall find that the defendant was informed that the plaintiffs were about to seize the goods in the store, at Chesapeake City, and promised that he would pay the plaintiffs' debt to prevent the plaintiffs obtaining posses-

sion of said goods, and for the purpose of obtaining possession thereof himself, and that by said promise he did so obtain possession, the plaintiffs are entitled to recover, and said promise is an original undertaking, and need not be in writing.

$4\frac{1}{2}$. If the jury find that the defendant promised to pay William H. Easton's indebtedness to the plaintiffs, and that the consideration moving him to do so, was to obtain possession of W. H. Easton's stock of goods, either for his, the defendant's, benefit, or for the purpose of distributing the same among the creditors of W. H. Easton, and the defendant did so obtain possession, then the plaintiff is entitled to recover, and said promise need not be in writing.

5. If the jury find from the evidence that William H. Easton invariably paid his indebtedness to the plaintiffs by a draft on the defendant, and that the plaintiffs sent the note or draft offered in evidence, to the defendant, who received the same, and afterwards wrote the letters of February 24 and March 22nd, to the plaintiffs, this is evidence tending to show that the defendant promised to endorse said note and pay the plaintiffs for the goods; and if the jury shall find said promise, and that thereby the defendant was enabled to procure possession of the stock in William H. Easton's store for himself, then the plaintiffs are entitled to recover.

6. If the jury should find that the telegram offered in evidence was sent by William H. Easton, over the wires, to the proper address of the defendant, and that the letter of February 23rd, was sent by the plaintiffs to the defendant, and that the letter of February 24, 1875, was sent by the defendant to the plaintiffs, and that owing to said letter, the defendant did not seize the goods of said William H. Easton, under an attachment, the plaintiffs are entitled to recover.

7. If the jury shall find the telegram to which William H. Easton's name is attached, was duly signed and sent

by him to the proper address of the defendant, and the message purporting to come from the defendant, was received by W. H. Easton shortly after, on the same day, from New York, then the burden of proof is on the defendant to show that he did not send the latter telegram.

8. If the jury shall find that the telegram dated Chesapeake City, was duly signed and sent by William H. Easton to the defendant's proper address, and the telegram dated New York, was received shortly afterwards on the same day, and is responsive to the first telegram, and that the plaintiffs wrote the letter of February 23rd, 1875, containing the words, "which our agent said you would endorse," referring to said note, and there is no other evidence of any communication between the plaintiffs' agent and defendant, except the New York telegram, and the defendant wrote the letter of February 24, 1875, to the plaintiffs, then plaintiffs are entitled to recover.

9. If the jury shall find that the telegram purporting to come from William H. Easton, was duly signed by him, and delivered at the office of the Western Union Telegraph Company, at Chesapeake City, and transmitted over its wires in regular course of business, to its principal office in New York, to defendant's proper address, and that it is the custom of the company to destroy all telegrams sent from and received at their office, at six months after their date, and the telegrams sent from and received at that office are all destroyed, and all telegrams sent to and received from New York of that date are destroyed, except at one office, to which this telegram would not in due course of business have gone, and it does not appear among the existing telegrams of that office; and that a responsive answer to said telegram, purporting to come from the defendant·at New York, addressed to William H. Easton, Chesapeake City, Maryland, his proper address, was transmitted over the wire of said company on the same date, and duly received by

said William H. Easton shortly after the transmission of the first telegram on the same day, and the check and balance sheet between the New York office of the company and this office, at Chesapeake City, for the month of February, 1875, tallied, then the burden of proof is on the defendant to show that he did not send said telegram purporting to come from him.

And the defendant offered the following prayer:

The defendant prays the Court to instruct the jury, that the evidence offered by the plaintiffs is not legally sufficient to entitle them to recover.

The Court (Dobbin, J.) refused the prayers of the plaintiffs, and granted the prayer of the defendant. The plaintiffs excepted, and the verdict and judgment being against them, appealed.

The cause was argued before Bartol, C. J., Brent, Grason, Miller, Robinson and Irving, J.

*A. C. Trippe,* for the appellants.

*John M. Carter,* for the appellee.

Brent, J., delivered the opinion of the Court.

There can be no question since the decision in this Court, of the case of *The Franklin Bank of Baltimore vs. Lynch,* 52 *Md.,* 270, of the right of the appellants to recover under the form of their declaration. The appellee is not sued as an endorser, but the action is brought upon the breach of an alleged promise to endorse.

Two questions arise in the case. The first is the sufficiency of the evidence to establish the promise. The appellants, merchants in the City of Baltimore, having a claim upon open account against William H. Easton, a merchant in Chesapeake City, Cecil County, Maryland, sent their travelling agent and salesman to see Easton,

and obtain from him a settlement.   He went to Chesa-
peake City and saw Easton, but was not successful in
getting the debt paid.   The agent threatened to procure
an attachment against the stock of goods in the store,
when it was finally agreed that Easton should go over to
the telegraph office, near by, and telegraph to his brother
in New York, and "hear from him first."   They accord-
ingly went to the telegraph office, when the following
despatch was sent to James T. Easton, the appellee:

"Chesapeake City, Maryland,
"February 16th, 1875.
"To James T. Easton, 2 Coenties Slip, New York.
"Smith & Whiting are here, and will attach the stock,
unless something is done immediately to secure them.
"William H. Easton."

On the same day the following telegram, which was
admitted in evidence subject to exceptions, was received
at Chesapeake City:

"New York, February, 16th, 1875.
"To W. H.   Easton, Chesapeake City,   Maryland.
"Will endorse your Smith & Whiting note—three
months.   Best I can do."
"J. T. Easton."

The agent of Smith & Whiting then took the promis-
sory note of Wm. H. Easton at ninety days for five hun-
dred and thirty-one dollars and fifty-eight cents, payable
at the First National Bank of Elkton, Maryland, and
upon his return to Baltimore delivered it to his princi-
pals.   They enclosed it to James T. Easton, New York,
for his endorsement, but he refused to endorse it, and
returned it to the appellants under cover of a letter,
dated New York, April 3rd, 1875.

Smith and Whiting *vs.* Easton.

The question raised is the admissibility in evidence of the dispatch purporting to come from New York, and offered for the purpose of binding the appellee as promisor to endorse.

The appellants proved under a commission to New York City, on April 5th, 1878, that all the messages sent from, and receipts for messages delivered from the office in that city, on February 16th, 1875, had been destroyed.

The message, if any, sent by James T. Easton to that office, to be transmitted to Chesapeake City, was the original, (*Scott & Jarnagin, Law of Tel., sec.* 357, *and authorities there cited*,) and not the message which was received over the wires at Chesapeake City. The latter must be considered as a copy, (*Ibid. sec.* 361,) and carries with it none of the qualities of primary evidence. Ordinarily the usual course is to show the delivery of the original message of the party, sought to be charged, at the office from which it is to be telegraphed, and then show that it was transmitted and delivered at the place of its destination. But even where the original is produced its authenticity must be established. And this either by proof of the hand-writing, or by other proof establishing its genuineness. The destruction of all the messages sent from the office, on the day named, is sufficient foundation for the admissibility of secondary evidence. But this secondary evidence can only be admitted upon proof that the copy offered is a correct transcript of a message actually authorized by the party sought to be affected by its contents.

In *Howley vs. Whipple, and others,* 48 *N. H.,* 487, a message was sent by telegraph to Montreal, and an answer was very soon received, purporting to come from the party to whom the message was addressed, and to be sent from Montreal. The Court refused to admit it, without proof that it was in fact sent by the proper party. It was contended in this case, that the rule, which per-

mits a letter to be admitted, as evidence against a party, when there is no proof of the hand-writing, except the fact that, in due course, it had been received in reply to a letter which had been addressed to the same party, should be applied to telegraphic dispatches. While it was thought it might apply to a dispatch in answer to a communication by letter, it was held to be inapplicable to a dispatch received in reply to a communication sent by telegraph. And this seems to be now the recognized law where both the message sent and the answer are by telegraph.

In the case of *The United States vs. Babcock,* 3 *Dillon,* 576, the Court refused to allow a telegraphic dispatch to be offered in evidence without proof of the hand-writing of the defendant, or that it was authorized, or sent by him or by his direction. And this we take to be the unquestioned rule.

The evidence in this case clearly establishes the message sent from Chesapeake City to New York, and that a message was sent from New York on the same day purporting to be in answer. But the proof wholly fails to connect the appellee with the latter, or to show that it was sent by him, or by his authority or direction.

The letters which have been offered in evidence, throw no light upon this question, indicating that the message sent was either received, or answered by the appellee. Neither the letter of the appellants, nor those of the appellee are found to contain a single allusion to any promise by telegraph to endorse the note, or to any telegraphic dispatch whatever.

The other question, which has been presented, is the liability of the appellee upon the promise to endorse, assuming that the telegraphic dispatches are sufficiently proved to be submitted to the consideration of the jury. Although there has been some discussion in the cases as to whether the dispatch sent to the office to be trans-

mitted, or the dispatch transmitted and received at its destination is the original, they all agree that a telegraphic dispatch is a sufficient compliance with the Statute of Frauds in its requirement that a promise, like that alleged in this case, should be in writing. This point was not controverted in the argument, and we shall pass it without further remark, as having been conceded by both sides.

The alleged promise of the appellee was to guarantee the debt of another already due by endorsing his promissory note. Such a promise to guarantee, to carry with it a liability to the payee, is not only required to be in writing, but it must also be supported by a consideration. The consideration in this case is the forbearance of the appellants to sue out process of attachment against the stock of goods of their debtor, then in the store at Chesapeake City.

In *Ecker vs. Bohn*, 45 *Md.*, 278, this Court held, that although forbearance to proceed in bankruptcy against a debtor, constituted a good consideration for the promise of another to pay the debt, yet if the creditor had in fact no right to take such proceedings against his debtor, the consideration failed and no action accrued upon the promise or undertaking. In this case the proof very clearly shows that there was no ground for the process of attachment against Wm. H. Easton. The appellants and he were residents of the State, and in that case an attachment would lie only for some one or more of the causes assigned in the Act of 1864, ch. 306. The agent states that he was prepared to make an affidavit that Easton was fraudulently disposing of his goods. Upon his cross-examination it appears, that the only disposition of the goods, he knew of or alluded to, was the sale of them in the usual mode of merchants, to customers who came to the store to buy. The goods were in the store for that purpose, and such a disposition of them no Court would hold to be fraudulent. The facts are not sufficient to support an

attachment against a resident.    Upon motion the defendant would be entitled to an order quashing the writ.

As the appellants, upon the proof in the record, had no legal right to attach, there was an utter failure of consideration, under the authority of the case just cited from 45 *Md.*, for the promise of the appellee, even if such promise had been established by proof legally sufficient to be submitted to the jury.

The law in our opinion being against the right of the appellants to recover, we think the rulings of the Court upon the prayers presented, were without error, and the judgment will be affirmed.

*Judgment affirmed.*

(Decided 29th June, 1880.)