# CHARLESTON.

## COBB *v.* GLENN BOOM & LUMBER COMPANY.

### Submitted January 12, 1905.   Decided January 31, 1905.

57   49
58  633

57   49
59   61
f 59  268
59  362
60  526

57      49
64     314
f65     179
65     270

57      49
66     272

1. JURY TRIAL—*Motion to Exclude Evidence—When Sustained.*

On a motion to exclude all the plaintiff's evidence and direct a verdict for the defendant, the court should be guided by what its action would be if the case were submitted to the jury, and they should find a verdict in favor of the plaintiff upon such evidence. If it would be the duty of the court to set aside the verdict of the jury because without sufficient evidence, then the court should sustain the motion to exclude, and instruct the jury to find for the defendant. But if, on the other hand, the evidence is such that, under the law, the court should refuse to set aside the verdict, the motion to exclude the evidence should be overruled.   (p. 52.)

2. STATUTE OF FRAUDS—*Sale of Land by Telegraph.*

A contract for the sale of real estate may be made by means of telegraphic communications, and if it can be collected from the telegrams referring to one another and directly related to one another, so that it may be fairly said to constitute one paper relating to the contract, and if the telegrams are signed by the parties or their agents, and it appears by them that the minds of the parties met, and that the terms of the contract, by referring to the telegrams can be made to clearly appear, it is a sufficient compliance with the statute which requires contracts for the sale of real estate to be "in writing and signed by the party to be charged thereby, or his agent."   (p. 54.)

3. CORPORATIONS—*Contracts by Officers of Corporation—When Binding.*

The secretary of a corporation has no power, merely as such secretary, to make contracts binding the corporation, and if the secretary, by virtue of his office, makes a contract selling the real estate belonging to the corporation, the contract is not enforceable against the corporation, unless it appears that the secretary had express authority to make such contract, or had been clothed with apparent authority by the corporation to do so, or that the corporation had acquiesced in or ratified the sale.   (p. 54.)

4. AGENCY—*Extent of Agency Presumed to be Known by one Dealing with.*

Where a person deals with an agent, it is his duty to ascertain the extent of his agency.   He deals with him at his own risk.   The law presumes him to know the extent of the agent's power; and if the agent exceeds his authority, the contract will not bind the principal, but only the agent. *Rosendorf* v. *Poling*, 48 W. Va. 621. (p. 55.)

5.  TELEGRAM.—*Proof of What Required.*

> The message sent to a telegraph office to be transmitted in reply
> to one received, is the original, and not the message received at the
> place to which it is transmitted. The latter must be considered as
> a copy, and carries with it none of the qualities of primary evidence,
> and cannot be admitted until the foundation is laid for the admis-
> sion of secondary evidence, and then can only be admitted upon
> proof that the copy offered is a correct transcript of a message act-
> ually authorized by the party sought to be affected by its contents.
> But even where the original is produced, its authenticity must be
> established, and this either by proof of the handwriting or by other
> proof establishing its genuineness. (pp. 56, 57.)

Error to Circuit Court, Tucker County.

Action by W. H. Cobb against the Glenn Boom and Lum-
ber Company. Judgment for defendant, and plaintiff brings
error.

*Affirmed.*

W. B. MAXWELL and J. P. SCOTT, for plaintiff in error.

A. JAY VALENTINE and L. HANSFORD, for defendant in
error.

SANDERS, JUDGE:

This is an action of *assumpsit* brought in the circuit court
of Tucker county, wherein the plaintiff claims that he entered
into an executory contract with the defendant by which he
purchased from it 800 acres of land, lying in Randolph coun-
ty, at $15.00 per acre, and that after the making of said con-
tract, the defendant sold the timber on said land to another
person, thereby rendering it impossible for it to carry out
its contract with him; and claiming damages in the sum of
$5,000. The defendant pleaded *non-assumpsit*, and filed an
affidavit denying that it signed or authorized the signing of
the telegrams in the declaration mentioned, and upon this
issue the case was tried. After the plaintiff introduced all
his evidence, the court, upon motion of the defendant, ex-
cluded it from the jury, and instructed them to find a verdict
in favor of the defendant. The jury returned a verdict as
instructed, and the court rendered judgment thereon, and it
is this judgment that we are now asked to review.

The right of the courts in this State to exclude the evidence
from the jury and to peremptorily instruct a verdict in favor
of the defendant, has been, for many years, well settled, but
it was not until the decision in the case of *Ketterman* v. *The*

*Dry Fork Railroad Co.*, 48 W. Va. 606, that a well defined and proper test was made for the guidance of the courts, for the decisions previous thereto, while they all recognized the well settled practice to be that the defendant had the right to make such motion, and the province and duty of the court to sustain it in any proper case, yet the difficulty has been when such a motion should prevail, and by what rule the court is to be guided. Judge Green holds, in the case of *Franklin* v. *Geho*, 30 W. Va. 34, that a motion to exclude all the plaintiff's evidence and direct a verdict for the defendant is equivalent to a demurrer to the evidence, and Judge Holt, in the case of *Aqua Impt. Co.* v. *Standard Fire Ins. Co.*, 34 W. Va. 764, holds that a motion to exclude or strike out evidence, is not, in all cases, the equivalent of a demurrer to the evidence, and that it should not, without modification, be permitted to supersede and replace such demurrer, and then, again, in the same book, the case of *Bridge Co.* v. *Bridge Co.*, 156, Judge Lucas holds that a motion to exclude the plaintiff's evidence ought to be overruled where the court cannot grant the same without usurping the functions of the jury, And then, in the 35th W. Va. *Carico* v. *W. Va. Central & Pa. Ry. Co.*, it is held that a motion to exclude the plaintiff's evidence on the ground that it is insufficient to warrant a verdict, should not be granted if there be any evidence which tends in any degree, however slight, to prove the plaintiff's case; and in the case of *Henry* v. *Ohio River R. R. Co.*, 40 W. Va, 235, it is laid down, in the ninth point of the syllabi, "Whenever the evidence tends in a fairly appreciable degree to sustain the plaintiff's action, the court must not strike out the evidence or direct a verdict for the defendant," Also *Gwinn* v. *Bowers*, 44 W. Va. 507, the rule is laid down to be that a motion to exclude plaintiff's evidence on the ground that it is insufficient to warrant a verdict will not be granted if there be any evidence which tends, in any degree, however slight, to prove his case. Therefore, it will be seen, from these various decisions, that in some it is held that the motion to exclude should be treated as a demurrer to the plaintiff's evidence; and in the case of *Aqua Impt. Co.* v. *Standard Fire Ins. Co.*, *supra*, it is held that in all cases it is not the equivalent of a demurrer to the evidence, and then, in others, that if there be any evidence

tending in any degree, however slight it may be, to make out the plaintiff's case, the motion should be overruled; and then, again, we find that in some it says that if there is any evidence tending in any appreciable degree to establish the plaintiff's contentions that the court should not exclude the evidence. The question as to when evidence tends in any appreciable degree to support the plaintiff's claim is very difficult to determine. What is meant by "appreciable degree" in passing upon questions of this kind is hard to define, and then to say that a court should not exclude the evidence because there is some evidence, no matter how slight it may be, to make out the plaintiff's case, means that the court shall submit many cases to the jury for its decision, when, at the same time, it is perfectly apparent that if the jury should find a verdict for the plaintiff that the court will be compelled to set it aside because contrary to the evidence. It seems contrary to good reason to say that when the plaintiff has introduced all of his evidence and from that evidence the court could not sustain a verdict in his favor, that the court should overrule a motion to exclude the evidence, and continue the trial of a case without merit. The proper test is, that when a motion is made to exclude the plaintiff's evidence, the court should be guided by what its ruling would be should that evidence be submitted to the jury, and upon it the jury find a verdict in favor of the plaintiff. If it would be the duty of the court to set aside the verdict because manifestly contrary to the evidence, then it is the duty of the court to exclude it from the consideration of the jury, and instruct them to find in favor of the defendant. This question was discussed by JUDGE BRANNON in delivering the opinion of the Court in the case of *Ketterman* v. *R. R. Co.*, and while he did not expressly lay this rule down to be the true test, yet he substantially held it to be so.

We look to the evidence to see whether or not the court did right in excluding the plaintiff's evidence. To establish his case plaintiff relies upon certain letters and telegraphic communications, which, in order to get a more complete understanding of the case, are here given *in extenso:*

"Sunbury, Pa., Nov. 25, 1901. W. H. Cobb, Esqr., Elkins, W. Va. Dear Sir:—Your valued communication of 22nd inst. just at hand. We realize that the point you make

regarding the difficulty of working our whole tract from one side, is probably well taken. and for that reason we have no objection to making sale of the land laying on the Otter Creek side & Shafers Fork side separately.    But we do not think the price you offer ($12.50) per acre for the land on Otter Creek side is sufficient for it,    You know this tract is exceptionally well timbered and will not grow less with time. Besides the coal question should be taken into consideration to a certain extent,    We feel positive there is coal in paying quantities on this tract, although we have not had it opened up.    Yours truly, Glenn Boom & Lumber Co.    per W. H. Sager, Secty."

"Elkins, W. Va., Nov, 27th, 1901.    To W. H. Sager, care Glenn Boom & Lumber Co., Sunbury, Pa.    Wire best cash price on Otter Creek land.    My offer about limit.    W. H. Cobb."

"Sunbury, Pa., Nov. 27th, 1901.    Fifteen dollars.    W. H. Sager."

"Elkins, W. Va. Nov. 27th., 1901.    To W. H. Sager, care Glenn Boom & Lumber Co., Sunbury, Pa.    Will take Otter Creek land at price named.    W. H. Cobb."

"Sunbury, Pa. Nov. 28th., 1901.    To W. H. Cobb, Elkins, W. Va.    Our Mr. Chester will reach Elkins Monday to consult with you.    Letter to-day.    W. H. Sager."

"Sunbury, Pa., Nov. 28th, 1901.    W. H. Cobb, Elkins, W. Va.    Dear Sir:    Your Teleg. of 27th rec'd.    Our Mr. Chester will reach Elkins about Monday evening to arrange terms of sale with you and enter into agreement with you if satisfactory all around.    Yours truly,    W. H. Sager, Secty Glenn Boom &. L. Co."

The court sustained the objection to the introduction of all the telegrams, except the first one mentioned, sent by the plaintiff to Sager, care of the defendant, inquiring the price of the land, and also sustained the objection to the introduction of the letter dated November 28, 1901.    But we will first look to see if from these letters and telegrams the plaintiff has shown such an executory contract as he could specifically enforce, for this is the basis of his action, and without establishing such a contract as he could, in a court of equity, specifically enforce against the defendant for the sale of said land, he would not be entitled to recover in this action.

Under chapter 98 of the Code, a contract relating to the sale of real estate, to be binding, must be in writing, and signed by the party to be charged thereby, or his agent.

This brings us to the question, is the contract made by the letters and telegrams such a one as meets the requirements of the Statute of Frauds, above referred to? It is not necessary that the whole agreement should be written upon one piece of paper, but if it can be fully collected from various papers referring to one another or directly related to one another, such as letters and telegrams written and sent, and the replies thereto, so that they may be fairly said to constitute one paper relating to the contract, is a sufficient agreement, if it appears that the minds of the parties met, and if the terms of the contract, by referring to the various writings, can be made to clearly appear. *Gaines* v. *McAdam*, 79 Ill. 201; *Elbert* v. *Gas Co.*, 97 Cal. 244; *Brewer* v. *Horst*, 127 Cal. 643; 27 Am. & Eng. Ency. Law (2 Ed.) 1092; 5 L. R. C. C. P. 295; *Smith et al.* v. *Easton*, 54 Md. 138; Story on Contracts, 1449.

While these letters and telegrams constitute a complete contract between the parties to them, yet, if they were written and sent by some person other than the one who is sought to be charged, it is necessary that the authority of the person writing and sending them should be shown. The defendant filed an affidavit with its plea as provided by section 40, chapter 125, of the Code, denying that it signed or authorized the signing of the telegrams which are claimed to have been received by the plaintiff. If not, under the general issue, without such affidavit, certainly under this plea, verified by affidavit, the burden of proof was upon the plaintiff to show that W. H. Sager, in signing these telegrams, was authorized by the defendant to do so on its behalf. There is no such authority shown or attempted to be shown, except that the evidence shows that Sager at the time, was the secretary of the defendant company, but does not show that he had any other connection with the defendant, or that he had authority to make the sale of the land in question. A secretary of a corporation, as such, has no authority to make contracts for it.

"The secretary of a corporation has no power, merely as secretary of the company, to make contracts for it. The

secretary is one of the corporate officers, but he has practically no authority. The corporation may, of course, expressly authorize the secretary to contract for it, or may accept and ratify his contracts after they are made." Cook on Corp,, sec. 717.

And then, Thompson on Corporations, sec. 4697, says: "The law does not ordinarily imply, in the secretary of a business corporation, the power, *ex-officio*, to bind the company by means of letters or documents signed officially." And, also, in Clark and Marshall on Corporations, sec. 704, we find: "Unless authority is expressly conferred, however, or he is clothed with apparent authority by being entrusted with the management of the business, or part of it, the secretary of the corporation has no authority to make any contracts on its behalf and in its name, or bind it by such acts. He has no such authority merely by virtue of his office."

The secretary not having authority by virtue of his office to make such a contract as is relied upon by the plaintiff for the basis of this suit, the defendant cannot be held liable by reason of the letters and telegrams sent by Sager, unless he had, at the time, express authority from the corporation to make sale of this land, or unless he was held out by the defendant in such a way as to make it apparent that he had such authority, or unless the contract was ratified by the defendant. Every one who deals with an agent is presumed to know the extent of his authority, and if he exceeds his express or apparent authority, his acts do not bind the principal, but only bind the agent, unless they have been ratified by the principal, *Curry* v. *Hale*, 15 W. Va. 867; *Dyer* v. *Duffy*, 39 W. Va. 148; *Wells* v. *Michigan Life Ins. Co.*, 41 W. Va. 131; *Rosendorf* v. *Poling*, 48 W. Va. 621.

It is claimed that the letter of the 25th day of November, 1901, addressed to the plaintiff and signed by Glenn Boom & Lumber Co., per W. H. Sager, Secty., shows that negotiations were pending for the sale of this land, and that the telegrams sent by Sager to the plaintiff in reply to the plaintiff's telegrams, having come from the proper place, and the proper officer of the defendant, raises the presumption that they were directed to be sent by the defendant. There is no such presumption arising from the facts in this case. While the letter shows that it was signed by the defendant, per-

Sager, Secretary, yet that does not show that Sager had authority to sign it, taking it that the letter is material to this controversy, which we think it is not, because, if a contract for the sale of this land was made, it was consumated by the three telegrams — the one asking the price of the land, the one in reply, quoting the price, and the one of the plaintiff accepting the proposition and agreeing to take the land, and none of these papers being shown to have been signed by the defendant, or its authorized agent, the circuit court committed no error when it sustained the motion of the defendant to exclude the evidence and direct a verdict for it.

But even if Sager had been shown to have authority to make this sale for the defendant, the telegrams sent by Sager were not proper to be admitted as evidence, because their genuineness had not been shown. There is nothing to show that they had in reality been written and signed by Sager. From the authorities there is some difficulty in determining *what are original telegrams* within the meaning of the rule that the best evidence must be produced. "By the decided weight of authority the question whether the communication sent or the one received is to be deemed the original depends upon which party is responsible for its transmission. In other words, for whom the telegraph company is agent. If there is but a single communnication, the dispatch as delivered at the place of destination is the best evidence. * * * "Of course, there must be competent *proof* that the alleged sender did actually *send* or *authorize* the sending of the message in question. * * * *In proving a contract* by telegrams, the best evidence is the telegram containing the offer as received at the point of destination and the dispatch containing the acceptance as delivered for transmission." Jones on Evidence, sec. 209.

Now, in this case, the plaintiff adopted the telegraphic system as a means for making the contract here relied upon, and made inquiry of Sager as to what he would take for the land in question, to which Sager replied, giving him the price, which plaintiff accepted. Now, in accordance with the above authority, the best evidence is the telegrams of the plaintiff as received at their destination and the telegram of Sager at the place at which it was delivered for its transmission. But

then, again, there is no evidence, as we have noticed above, that Sager, in sending the telegrams, was acting as the agent of the defendant, and, of course, for that reason they were inadmissible. It is argued that the telegrams are without the jurisdiction of the court, and, even if this is true, it does not authorize the introduction of copies of them until their genuineness has been shown, and the authority of the person sending them to do so. If such a message as the plaintiff claims was sent to him he could have shown the authenticity of it when delivered to be telegraphed to him, and then show, that, as it was delivered to the telegraph company, it was transmitted and delivered at the place of destination. But whether a copy is introduced or the original, it is necessary that the genuineness of it should be shown before it becomes competent evidence. "A dispatch or a copy of a dispatch purporting to have been sent by A. B., as Cashier, to C. D., cannot be read in evidence without first proving that it was genuine paper, that is, that it was written and sent by the party whose name it bears." *National Bank* v. *National Bank*, 7 W. Va. 544. And also see *Smith & Whiting* v. *Easton*, 54 Md. 138; Jones on Ev., sec. 209. There being no evidence to show or tending to show that these telegrams which were claimed to have been sent by Sager were signed by him and delivered to the telegraph company for transmission, the court committed no error in rejecting them.

For the foregoing reasons we find no error in the judgment of the circuit court, and it must, therefore, be affirmed.

*Affirmed.*