# Richmond

CLARENCE C. HARLOW v. COMMONWEALTH OF VIRGINIA.

June 10, 1963.

Record No. 5603.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*R. Russell Myers*, for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Clarence C. Harlow, sometimes hereinafter designated as defendant, was on September 4, 1962, indicted on a charge of grand larceny. The indictment alleged that on January 18, 1962, he, in the city of Bristol, Virginia, unlawfully and feloniously, did steal, take, and

carry away U. S. coin and currency in the sum of $700.00, the property of J. E. Loudermilk. At the request of defendant, competent counsel was assigned by the Corporation Court of the city of Bristol, Virginia, to represent him. Upon arraignment he pleaded not guilty, and the case was heard before a jury.

At the conclusion of the evidence on behalf of the Commonwealth, defendant moved to strike on the grounds that the evidence was insufficient: (1) to show that the crime, if committed, was committed in Virginia; (2) that it did not establish the *corpus delicti;* and (3) that it failed to show the guilt of the defendant beyond a reasonable doubt. The motion was overruled, and defendant excepted. The defendant did not offer any evidence, or testify in his own behalf. The jury returned a verdict finding him guilty and fixed his punishment at 5 years in the penitentiary. The court entered judgment sentencing the defendant to serve 4 years of the 5-year sentence, imposed by the jury, suspending sentence for the fifth year, and putting him on probation for a period of 3 years thereafter, conditioned upon his good behavior and obedience to all laws. Thereupon, defendant moved the court to set aside the verdict and grant him a new trial, on the grounds that the verdict was contrary to the law and the evidence, and without sufficient evidence to support it, and for error of the court in the admission of improper evidence. The court overruled the motion. We granted this writ of error.

The record presents the following facts, circumstances and proceedings:

On January 18, 1962, J. E. Loudermilk, a resident of Tennessee, came to Bristol, Virginia. He brought with him a billfold containing $700.00 secreted in a hidden compartment of the billfold, and $10.00 in the usual billfold compartment, along with some "wood hauling tickets." About 8:00 p. m., he went to the Victory Grill on Front street, in Bristol, Virginia, 300 feet from State street, the division line between the cities of Bristol, Virginia and Bristol, Tennessee. While sitting in the grill drinking beer, he met the defendant, Harlow. Harlow asked Loudermilk to buy him a bottle of beer, and from 8:00 p. m. until 10:15 p. m., Loudermilk bought the defendant "maybe" two or three bottles of beer. Loudermilk apparently became intoxicated, and, for that reason, Mrs. Pearl Walling, the owner and operator of the grill, refused to let him have any more beer. She said that the defendant and Loudermilk left the restaurant about 10:15 p. m., Loudermilk walking out unassisted.

Loudermilk testified that later, about midnight, he awoke in an

old unlicensed automobile parked in a lot back of the "T. and T. Body Works." "T. and T. Body Works" is located in Bristol, Virginia, about 9 blocks from Victory Grill, and 300 to 500 feet distant from State street. His truck was parked nearby. The area is primarily a business area, with a residential section about one-half of a block away. At the rear of the "Body Works" are four apartments, three of which were vacant, and the other occupied by a sister of the defendant on the night in question. Upon awakening, Loudermilk found that his billfold was "tored up," and the $700.00 in its secret compartment was "gone." Also removed from the billfold were his "wood hauling tickets" and some check stubs. The sum of $2.00 was left in another part of the billfold.

Loudermilk said he had no recollection whatever as to what transpired from the time he was seen leaving the grill at 10:15 p. m., until he awoke in said automobile, a period of about three and three-quarters hours. He remembered playing some records while in the grill, and that the defendant had, at some time during the course of their association, suggested that they go to the defendant's home. He did not remember leaving the grill. He could not say whether he had thereafter gone to Bristol, Tennessee, or remained in Virginia. He did not know how he lost his money, whether or not it was stolen, and, if stolen, who stole it, or when and where it was taken. He reported the loss to the police on the early morning of January 19, 1962, and upon his complaint a warrant was issued against Harlow, charging the latter with robbery from the person.

The police immediately began an investigation; but were unable to locate the defendant. Captain Newton Roark went to the home of Mrs. Eula Joanne Harlow, wife of the defendant, twice on January 19, the first time looking for the defendant, and the second time at the request of Mrs. Harlow. Roark said that on his second visit, Mrs. Harlow "gave me $165.00, and told me where she got it." Ruby Keesee, who lived with her daughter, Mrs. Harlow, said the $165.00 was a part of $200.00, which the daughter had, the remainder having been spent "for groceries and things."

Benton S. McClane, manager of the Western Union Telegraph Office in Bristol, Virginia, for about two months prior to the trial of this case, on September 7, 1962, was, over the vigorous objection of defendant, permitted to testify as to the contents of a money order telegram received in his office more than five months before he came there. The telegram, written on a form of the Western Union Telegraph Company, was dated 10:30 a. m., January 19, 1962, at the

office of the telegraph company at Delaware, Ohio, (432 miles from Bristol, Virginia), and received the same day at the Bristol office at 10:49 a.m. The body of the telegram reads as follows:

"Two Hundred dollars [200] CAU. Eula Joanne Harlow, Phone Number North 9-1860, 336 Rice Terrace, Bristol, Vir. Calling late this afternoon. Be ready. Get wrist watch. MOD."

Upon the face of the telegram were several notations made prior to McClane's employment in the Bristol office. Over the objection of defendant, McClane explained the meaning of the notations, saying, for instance, that "CAU." meant "Caution" and "MOD" meant "Money Order Department." He said another notation showed the payment of $200.00 to Eula Joanne Harlow, after she had identified herself.

However, there was no preliminary proof that the notations on the telegram were parts of records made in the ordinary and customary manner by employees of the telegraph company in the due course of its business, at or near the time of the transactions to which they related. Cf. 7 Mich. Jur., Evidence, § 101, page 454; 20 Am. Jur., Evidence, § 1051, pages 892 *et seq.*

It appears from the evidence that Harlow had been unemployed for sometime. There is no evidence as to where he was living at the time of the commission of the alleged offense. His mother-in-law said that he was not living with his wife, and that he had given his wife only $30.00 since 1961.

Harlow was arrested in July, 1962, in Denver, Colorado, waived extradition, and was returned by the police to Bristol, Virginia. When asked for his name in Denver, he gave his correct name, and when informed of the charge for which he was arrested, he told the police that he knew nothing of the alleged offense.

Defendant relies principally upon his assignment that the court erred in admitting the telegram in evidence without proper authentication. He points out that there was no evidence that he sent or authorized the sending of the telegram, and that the testimony of McClane was pure hearsay and inadmissible in evidence.

This is a case of first impression in Virginia dealing with the question of the nature of the evidence necessary to prove the authorship or identity of the sender of a telegram. The authorities elsewhere are agreed that it is difficult, if not impossible, to formulate a definite or precise standard governing the admissibility of a telegram in evidence. It has never been considered safe to make telegrams self-authenticating. There must be something to show that the mes-

sage is not the act of a stranger. While authenticity may be shown by direct and circumstantial evidence, it is not enough that the writing on its face purports to be from the sender. There must be competent proof that the alleged sender did actually send, or authorize the sending of the telegram in question, whether a copy or original, before it becomes competent evidence. *Cobb* v. *Glenn Boom, etc. Co.*, 57 W. Va. 49, 49 S. E. 1005, 110 Am. St. Rep. 734, 741; 7 Mich. Jur., Evidence, § 127, page 484; 32 C. J. S., Evidence, § 706, page 607; 20 Am. Jur., Evidence, § 963, page 811; Annotation 52 A. L. R., pages 583 *et seq*. Cf. *Ridings* v. *State*, 108 Nebraska 804, 189 N. W. 372.

The telegram was not signed by anyone. There is no evidence that Harlow applied for the telegram, furnished the funds for transmission, or from whom the message came. There is no evidence that it was written, or authorized to be written, or sent by Harlow. The burden was upon the Commonwealth to establish the connection of Harlow with the message. No burden rested upon him. He had the right to stand upon the legal presumption of innocence, which went with him throughout the trial. For lack of proof of its authenticity, the telegram was not admissible in evidence. Without the telegram, there was not sufficient competent evidence to connect Harlow with the alleged theft.

It is true that some circumstances point the finger of suspicion toward defendant; but as we have repeatedly held: "Mere suspicion, however grave, is not sufficient to support a verdict of guilty. The evidence must be not only consistent with the guilt of the accused, but inconsistent with his innocence." *Garner* v. *Commonwealth*, 186 Va. 600, 613, 43 S. E. 2d 911; *Adkins* v. *Commonwealth*, 200 Va. 238, 243, 105 S. E. 2d 164.

We find no merit in the assignments of error relating to a lack of proof that the alleged offense was committed in Bristol, Virginia, and to a failure to establish the *corpus delicti*.

For the reasons stated, the judgment appealed from is reversed; the verdict of the jury set aside; and the case remanded for a new trial, not inconsistent with the views herein expressed.

*Reversed and remanded.*