## Richmond

### ELIZABETH MORTON

### V.

### COMMONWEALTH OF VIRGINIA

April 29, 1983.

Record No. 821022.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

*Joseph O. Humphreys* for appellant.
*Robert B. Condon, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Elizabeth Morton was tried by the court, sitting without a jury, under an indictment charging her with larceny of a check belonging to Lucy Delaney and having a value in excess of $200, in violation of Code § 18.2-98. Finding her guilty as charged, the trial court sentenced Morton to confinement in the State penitentiary for a term of four years. On appeal, the sole question is whether the evidence is sufficient to support the conviction.

Lucy M. Delaney testified that she lived on State Route 616 and had a mailing address of Route 1, Box 200, Jetersville. She expected to receive on May 1, 1981, her monthly government

check in the amount of $228 for disability. She looked in her mailbox for the check on that date but it was not there and she never received it. She had been receiving these checks for "quite a while," and each normally came on the first day of the month. Shown a photocopy of a United States Treasury check dated May 1, 1981, payable to the order of Lucy M. Delaney in the amount of $228, purportedly endorsed by her on the back, Delaney denied that the endorsement was hers or that she had ever seen the original check.

A bank teller employed at a branch office in Farmville identified the check for $228 as being one she cashed on May 1 between 1:00 and 1:45 p.m. She could not identify the person who cashed the check, nor could she remember whether the check was endorsed in her presence.

Bernice Booker was a neighbor of Delaney's; their houses were about 100 feet apart on Route 616. Booker testified that on May 1 about 11:30 a.m. a blue Ford automobile stopped at her house. Morton, whom she had known for years, was a passenger on the front seat. There were three men in the car, one of the two passengers on the back seat being John Lee, whom she knew; the driver and the other passenger were strangers. Only Lee got out of the car.

Booker said that Morton, who also knew Delaney, asked how Delaney "was . . . doing" and whether she was able to walk to her mailbox. Morton also asked "what time did the mailman run." Booker told Morton that the mailman, who had not yet arrived, usually came about 12:30 p.m. The visitors left, saying they were going back to Farmville, but Booker noticed that they proceeded in the opposite direction toward Dettonville.

Purcell Van Romdt, Jr., who resided in Nottoway County, received mail at a house he owned in Amelia County about a mile from Delaney's residence. He testified that on May 1, expecting to receive a tax refund check, he drove to his mailbox on Route 616 to pick up his mail but found that he had arrived too soon. The mailman usually stopped at his mailbox at 12:50 p.m. or 1:00 p.m. To pass the time until the mail arrived, Van Romdt continued along the road toward Booker and Delaney houses and Dettonville. The mail carrier was about at Booker's mailbox when Van Romdt met him, passed him, and saw a blue Ford "pulling off from Mrs. Delaney's mailbox right behind him." Van Romdt also met and passed this car. The passenger on the front seat was

the occupant closest to the mailbox. If there had been any mail that day for Delaney, Van Romdt said, the carrier would have deposited it in her mailbox before stopping at the Booker mailbox. The mailman regularly came from Dettonville, arrived first at Delaney's mailbox, then at Booker's, and then proceeded down Route 617 about two miles to deliver mail to residents on that road before returning to Route 616 to leave any mail for Van Romdt in his box.

Turning around at the next state road, Van Romdt reversed his course on Route 616 to go back for his mail. At another intersection, the blue Ford passed him going in the opposite direction toward Dettonville. Van Romdt drove from Route 616 down Route 617 but turned back when he met the mail carrier returning to Route 616. Van Romdt came to a stop before reentering Route 616, looked to his right, and saw the blue Ford "sitting" at his mailbox about a quarter of a mile from the intersection. Before he could get to the mailbox the car "pulled off," but he caught up with it at the next mailbox, Percy Gibson's, where it made another stop. Van Romdt questioned the driver, whom he did not know; he knew and recognized Morton as the passenger on the front seat and Lee as one of the two passengers on the rear seat. The tax refund check which Van Romdt was expecting came in the mail the next day.

At the conclusion of the presentation of evidence by the Commonwealth, the trial court overruled Morton's motion to strike the evidence. Morton presented no evidence in her behalf but renewed her motion to strike. The court overruled this motion as well as Morton's motion to set aside the verdict as being contrary to the law and the evidence.

Morton argues that the circumstantial evidence shows no more than suspicious conduct on her part, insufficient to support her conviction. She says that the evidence fails to prove that the check was ever in Delaney's mailbox, or that Morton or any of her companions stole, possessed, or cashed the check. Relying principally on *Harlow* v. *Commonwealth*, 204 Va. 385, 131 S.E.2d 293 (1963), and *Duncan* v. *Commonwealth*, 218 Va. 545, 238 S.E.2d 807 (1977), Morton contends that the evidence against her is not sufficiently strong to prove her guilt to the exclusion of every reasonable hypothesis of innocence, and to a moral certainty, as required under applicable legal principles. *See Comer* v. *Commonwealth*, 211 Va. 246, 249, 176 S.E.2d 432, 434 (1970).

In *Harlow*, the evidence established that the unemployed defendant left a bar with an inebriated companion who awoke several hours later to discover that $700 was missing from his wallet. The victim had no recollection of what transpired between the time he left the bar and the time he awoke in an old unlicensed automobile parked behind an automobile body shop; his truck was parked nearby. At the rear of the body shop were four apartments, one of which was occupied by the defendant's sister. The next morning police could not find the defendant at home, but his wife subsequently turned over to them $165. Months later, the defendant was arrested in Colorado. He gave his correct name but denied any knowledge of the offense. We reversed his conviction of grand larceny.

In *Duncan*, we held the evidence insufficient to support a conviction of grand larceny of tires, wheels, and floor mats from a train transporting new automobiles. The defendant was seen near the stopped train and then on the train between two of the automobiles. Later on the same day, mounted tires and floor mats were found in honeysuckle near the place where the train had stopped. The defendant, when questioned by the police, denied any knowledge of the theft. We held the evidence only showed that the defendant was near the scene of the crime and in the general area where the stolen property was found and that it failed as a matter of law to show beyond a reasonable doubt that he was the perpetrator of the crime.

The evidence in *Harlow* and *Duncan* clearly failed to exclude reasonable hypotheses of innocence and was therefore insufficient to support the convictions. In *Harlow*, only the volunteering of money to the police by the defendant's wife tended to contradict the possibility that the defendant and the victim had parted company in front of the bar and had no further contact. In *Duncan*, the Commonwealth's evidence showed that the defendant, an 18-year-old, was seen working on an old car on the day of the theft. The defendant's companion claimed to have climbed aboard the stopped train only to look at the sports cars it carried. 218 Va. at 546, 238 S.E.2d at 808. No evidence other than the subsequent discovery of the theft was inconsistent with the reasonable hypothesis that the defendant also went on board the train only to view the sports cars. The circumstantial evidence in each case was sufficient to create suspicion but insufficient to prove guilt.

There is much more than mere suspicion in the present case. Morton came to Booker's shortly before the mail delivery on May 1 inquiring about the mailman's schedule and Delaney's ability to walk to her mailbox. Delaney had been receiving disability checks on the first day of each month for some time. The mailman usually stopped about 12:30 p.m. The blue car in which Morton was riding was stopped at Delaney's mailbox when the mailman was at the next mailbox after Delaney's. Morton was the occupant of the blue car who was closest to Delaney's mailbox when the car stopped there. The car changed direction repeatedly and stopped at two other mailboxes just after the mailman made his deliveries in this area. Each time the car stopped with the mailbox next to the passenger side of the car, the side on which Morton was riding in the front seat. When last seen in the area, at Gibson's mailbox, the car was headed toward Farmville. Delaney did not find her check in her mailbox, but the check, dated May 1, was cashed in Farmville the same day between 1:00 p.m. and 1:45 p.m.

The inferences to be drawn from the proven facts were within the province of the fact finder so long as they were reasonable and justified. *Higginbotham* v. *Commonwealth*, 216 Va. 349, 353, 218 S.E.2d 534, 537 (1975). We will not set aside the judgment of the trial court unless it appears from the record that the judgment is plainly wrong or without evidence to support it. Code § 8.01-680.

The circumstantial evidence supports the reasonable inference that Morton and her companions came to the neighborhood for the purpose of stealing Delaney's government check and any others that might be available, that they stopped at Delaney's mailbox immediately after the mailman had left her check, that they stole the check about 12:30 p.m., and that they cashed the check in Farmville shortly thereafter. Their entire course of conduct supported the conclusion that, as the trial judge stated, Morton and her companions "were out rifling mailboxes" on Route 616.

We conclude that the evidence, considered as a whole and in the light most favorable to the Commonwealth, is sufficient to support the finding of the trial judge that Morton participated in the theft of Delaney's check. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

COMPTON, J., dissenting.

I cannot join the majority. In my view, the evidence creates no more than a suspicion that defendant was a perpetrator of the crime.

The proof fails to show that the check was actually delivered to Delaney's mailbox. The evidence also fails to establish that defendant or any of her companions either took the check from the mailbox or cashed the check at the Farmville bank. Moreover, there is no showing that defendant, at any time, possessed the check.

Thus, in my opinion, the evidence is wholly inadequate to establish beyond a reasonable doubt that Morton was guilty of larceny of Delaney's check.

CARRICO, C.J., joins in dissent.