# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Emmet Massie v. Commonwealth.

### November 13, 1924.

1. Escape—*Assisting Escape—Guilty Knowledge—Case at Bar.*—If accused bought saws for a party who left a note in his mail box requesting him to do so and placed them under a bridge as also requested by the note, without knowing to what use the writer of the note intended to put the saws, accused could not be convicted of conveying the saws into a jail 'with intent to facilitate the escape of a prisoner, even though the writer of the note actually delivered the saws into jail and the prisoner escaped.

2. Criminal Law—*Circumstantial Evidence—Contradictory Statements of Accused.*—Generally speaking, in cases where the conviction of the accused must rest upon circumstantial evidence, much weight is given to contradictory statements of material facts by the accused, but such statements are not conclusive of his guilt. They should be considered along with the other facts and circumstances shown in evidence to determine whether, upon the whole case, the evidence excludes every reasonable hypothesis consistent with accused's innocence.

3. Criminal Law—*Circumstantial Evidence—Consistent with Guilt—Inconsistent with Innocence.*—It is not sufficient that the facts and circumstances proven be consistent with his guilt. They must be inconsistent with innocence.

4. Criminal Law—*Evidence Necessary to Convict—Several Hypotheses.*—Where the evidence leaves it indefinite which of several hypotheses is true, or establishes only some finite probability in favor of one hypothes˙s, such evidence cannot amount to proof, however great the probability may be.

5. Escape—*Assisting Escape—Evidence not Sufficient to Support Conviction.*—In the instant case, a prosecution for assisting the escape of prisoners from jail, the evidence did not exclude every reasonable hypothesis consistent with the innocence of the accused, and therefore was insufficient to justify a verdict of guilty.

Error to a judgment of the Circuit Court of Amherst county.

*Reversed.*

The opinion states the case.

*William Kinckle Allen,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

Emmet Massie was convicted under an indictment charging him with conveying into the jail of Amherst county a hack saw with the intent to facilitate the escape of James P. McCarthy and James Brown, who were confined therein on a charge of felony, and sentenced to the penitentiary for one year.

On the night of August 24, 1923, between nine and ten o'clock, McCarthy and Brown and three other prisoners, charged with misdemeanors, made their escape from the Amherst jail. McCarthy and Brown were confined in a steel cell and made their escape by sawing the steel bars of the cell. The jailer arrived at the jail at ten-thirty and found a hack saw and blade in the cell. Next morning his son found a hack saw blade, broken into three pieces, in the grass below the window through which the prisoners made their escape. The jail was unenclosed and is located on an alley which is used by parties going to the jail and elsewhere in the village of Amherst. The accused visited the jail so frequently prior to July 16, 1923, while his friend John Campbell was confined therein, that the jailer spoke to him about it and warned him to keep away, and he was not seen there again until August 24th. McCarthy and Brown were not committed to jail until August 2, 1924. They were strangers to Massie, but he was acquainted with

Floyd and Pettigrew, two other prisoners in the jail. He had loaned Floyd $1.50, and went to the jail on August 24th to collect this debt. Floyd did not have the money and told him to return later that day and he would pay him, which he did. While at the jail Brown and McCarthy requested the accused, through Floyd, who was not in the cell, to bring them some bread, cigarettes, sardines and a watermelon. The accused brought these articles and handed them through the window to Floyd, who gave them to Brown and McCarthy and collected from them the amount due and passed it to Massie.

Between four and five o'clock on the afternoon of August 24th, Wills Turner, clerk in a hardware store at Amherst, sold the accused a hack saw and two blades. The hack saw and blades sold him were new and were the same kind as the one found in the jail, but Turner could not swear that the saw found in the jail was the saw he sold Massie. The saw found in the grass at the window was very rusty. Massie told Turner he was directed to buy two hack saws and Turner advised him to buy one frame and two blades, which he did. Turner identified the box found near Sam Campbell's bridge as the box in which he delivered the hack saw and blades to Massie. It bore the price mark of his store. He had sold hack saws to other people, but could not give the name of any other person to whom he had sold one.

Massie left the store by the side door. Later he was seen in the alley that leads towards the jail. This alley is used as a public road. Another witness, who lived near the jail, saw Massie about five o'clock on August 24th passing over the stile through the courthouse square, towards the jail, but could not say that he went to the jail. The public used this stile and many people

pass through the square and it was a frequent occurrence for people to go to the jail and talk with the prisoners. On the same afternoon this witness saw a stranger around the jail two or three times. He was tall and wore a straw hat and a blue suit. Massie was not seen at the jail after he purchased the hack saws.

When first arrested on the road about one and one-half miles from Amherst, the jailer says the accused, in answer to questions by him, admitted buying the hack saws and stated that they were at his home in his tool chest. At the examining trial before the justice, and at his trial in the circuit court, the accused testified that he found an unsigned note in his mail box requesting .him to buy two hack saws and leave them under Sam Campbell's bridge, which was located on the road between Amherst and his home; and that he purchased the saws and put them under the bridge as requested. On the morning after the examining trial, the empty box, in which the saws were delivered to him by Turner, was found near the bridge and the accused had not passed that way since his arrest. The accused, according to the testimony of one witness, was seen the night of the jail delivery about ten or eleven o'clock on the road from Amherst to his home, four miles from Amherst, riding towards his home on horseback. This witness says the accused saw him before his trial in the circuit court and told him he did not leave home Friday night, and tried to make him say he was mistaken in saying he met him on the road that night.

Viewing the evidence from the standpoint of the Commonwealth, the foregoing are the material facts in the case.

From the standpoint of the accused the facts are, in substance, these: It is not controverted that Emmet Massie is a young man, nineteen years old, bears a good

reputation as a law abiding citizen, and was assisting in the support of his infirm parents. When not engaged on the farm he regularly cut, hauled and sold wood in the town of Amherst, about five miles from his home. He carried a load of wood to Amherst on Friday morning, August 24, 1923, and left for home between five-thirty and six o'clock in the afternoon. He started for Amherst with a load of wood early the next morning and was arrested before he arrived at his destination, about one and one-half miles from Amherst.

The accused testified at his trial in the circuit court that on the morning of August 24th he found a $2.00 bill in his mail box pinned to a note which read as follows:

"Emmet get me two hack saws, put them under bridge at Sam Campbells" (the note was exhibited as evidence to the jury and had in it two pin holes as if something had been pinned to it); that in pursuance of this note he bought the hack saw and two blades from Turner for $1.10 and placed them under Sam Campbell's bridge as directed; that he went to bed early Friday night and did not leave his room until early Saturday morning; that he knew nothing about hack saws, did not know McCarthy or Brown, had never seen them, and had no reason to help any one escape jail; that he did not know the names of the men who escaped; that Clarence Watts did not meet him in the road about ten or eleven o'clock on the night of August 24th; that when arrested and told that he was charged with buying hack saws and letting boys out of jail, he stated to the officers that he had nothing to do with letting boys out of jail and could take them back with him and show them where he put the hack saw on his way home; and that he did not tell them the hack saw was at his house, or in his tool chest.

It appears from the testimony of the accused's mother, father and brother that he did not leave his home after supper Friday night until Saturday morning. Durphy Wright was in twenty-five steps of the road Friday night, August 24th, until ten o'clock, the moon was shining brightly, and he knows that accused did not pass along the road between his home and Amherst that night.

The accused was in Shrader's shop at Amherst Friday afternoon, August 24th, at five o'clock, and carried under his arm a package wrapped in paper, about six or eight inches wide.

J. P. McCarthy, who escaped and was apprehended and returned to jail, testifying for the defense, stated that his home was in Philadelphia; that the accused had nothing to do with their escape; that he and Brown had a friend named Wilson who had written them letters, had been to the jail several times, and came there on Friday night about nine-thirty o'clock and tossed the saw through the window in the front cell and said: "Here you are;" that he recognized the voice as the voice of Wilson; that neither he nor Brown knew Massie, and had never requested him to bring the saw to the jail, and he is certain Massie had nothing to do with it.

Fleming Floyd, a "trusty" in jail, testified that Massie had nothing to do with the escape to his knowledge. Sam Pettigrew, another "trusty," who was confined in the jail, testified that the accused did not pass any hack saw into the jail; that the articles which he purchased for the prisoners were brought to the jail by him before four o'clock. Floyd and Pettigrew did not escape.

There are two assignments of error:

(1) There is no evidence upon which to convict the accused; and

(2) The court misdirected the jury in giving the Commonwealth's instructions Nos. 2 and 4.

Conceding that all conflicts in the testimony have been settled by the verdict of the jury in favor of the Commonwealth, we have no proof that the accused personally conveyed the hack saws to the jail. No one saw him at the. jail after he had purchased the saws. If true, that he was seen on the road four miles from Amherst going towards his home on horseback at ten o'clock at night, it does not follow that he was returning from the jail. It is not denied that he arrived home from Amherst in his wagon about seven o'clock P. M. It is not controverted that the factory manufacturing the hack saws accused purchased made thousands of other saw frames and blades exactly similar to them, some of which were sold by Turner at the store in Amherst. It cannot be said that the saw found in the jail has been identified as the saw Turner sold Massie. The prisoners who escaped were unknown to the accused and the evidence suggests no reason why he should help them make their escape. If Massie had been buying the saws for his own use, he would not have remarked to Turner, when making the purchase, that he was "directed to get two hack saws." It was generally known that Massie was engaged in hauling wood to Amherst, and people along the route frequently requested him to purchase and bring articles from Amherst for them. It is not contended that the note mentioned in the evidence was in the accused's handwriting. He had no opportunity to prepare it after his arrest. The empty box in which the saws were sold was found near the bridge, and the accused had no opportunity after his arrest to place it where it was

found.   Being placed there before his arrest, its location tends to sustain the statement of the accused that he placed the box with the saws in it under the bridge as requested in the note.

[1] If, as Massie says, he bought the saws for the party who left the note in his mail box, it does not appear that Massie knew what use the writer of the note intended to put them to.   Turner testified that Massie did not know what a hack saw was and asked him about it.   If McCarthy's friend, Wilson, wrote the note and did not explain to Massie what he wanted to do with the saws, and there is no proof that he did, Massie cannot be convicted of conveying the saws into the jail with intent to facilitate the escape of Brown and McCarthy, even though Wilson actually delivered the saws into the jail.

[2, 3] Generally speaking, in cases where the conviction of the accused must rest upon circumstantial evidence, much weight is given to contradictory statements of material facts by the accused, but such statements are not conclusive of his guilt.   They should be considered along with the other facts and circumstances shown in evidence to determine whether, upon the whole case, the evidence excludes every reasonable hypothesis consistent with his innocence.   It is not sufficient that the facts and circumstances proven be consistent with his guilt.   They must be inconsistent with his innocence.

In *Burton & Conquest* v. *Commonwealth*, 108 Va. 892, 899, 62 S. E. 376, 379, Judge Keith, considering the evidence and speaking for the court, says:   "Where a fact is equally susceptible of two interpretations, one of which is consistent with the innocence of the accused, the jury cannot arbitrarily adopt the interpretation which incriminates him."

[4] In *Johnson's Case*, 29 Gratt. (70 Va.) 796-817,

this court approved the doctrine that where the evidence leaves it indefinite which of several hypotheses is true, or establishes only some finite probability in favor of one hypothesis, such evidence cannot amount to proof, however great the probability may be.

[5] We are of the opinion that the evidence in the instant case does not exclude every reasonable hypothesis consistent with the innocence of the accused, and is plainly insufficient to justify the jury in finding the prisoner guilty of the offense charged in the indictment.

Our conclusion as to the first assignment of error makes it unnecessary to consider the second assignment.

The verdict and judgment will be set aside and the case remanded for a new trial, if the Commonwealth shall be so advised.

*Reversed.*