## Richmond

JOHN P. ADKINS V. COMMONWEALTH OF VIRGINIA.

October 13, 1958.

Record No. 4880.

Present, All the Justices.

The opinion states the case.

*Alfred M. Hickman* (*Hickman & Summers*, on brief), for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General* (*A. S. Harrison, Jr., Attorney General*, on brief), for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The defendant, John P. Adkins, on his trial before a jury, was convicted of grand larceny and sentenced to three years in the penitentiary in accordance with the verdict. Under his assignments of error he contends that the evidence was not sufficient to support the verdict and that the court erred in rejecting certain evidence offered by him and in giving certain instructions for the Commonwealth.

He was charged with stealing walnut logs cut from three walnut trees standing on a tract of land of about 350 acres owned by John R. Francisco in Goochland county. Code § 18-168.

Francisco testified that around the first of August (1957) he made an agreement with the defendant to sell to him only the sycamore trees along the river on this tract at $15 a thousand; that during the timber operations he noticed that the Caterpillar tractor used by the defendant had gone up through the woods; that he followed its tracks and then he "thought about these big walnuts up there, that maybe he had gone and cut them," so he went on up and came to an area where three walnut trees had been cut and dragged up the hill with the tractor.

He measured the stumps of these trees and two of them were 30½ inches in diameter and the trees were 40 feet high measured from the stump to the lap; he said the third one was smaller and he did not measure it but guessed it to be about 20 feet high. He stated on cross-examination that he did not find the third tree until after he had gotten the warrant for the defendant and "I estimate that [tree] at about 40 foot long, too," and he also found there the power saw referred to below. Francisco then was asked if he knew where these logs went and he replied that they, or some of them, went to the Crozet Lumber Company, Crozet, Virginia; and he knew that, he said, "because Adkins told me that he carried them there." He then related conversations had with the defendant which will also be referred to later on.

The Commonwealth called as its witness J. Howard Smith, vice-president and general manager of Crozet Lumber Company, who testified that on August 23, 1957, he bought and received from the defendant ten walnut logs and paid him $168.77 for them. He introduced the original sales slip and testified therefrom as to the length and diameter of each of the ten logs. He was asked if any of these logs fitted the 30½ inch diameter of the stumps of the two largest trees as measured by Francisco, and he replied, "No, sir,

I don't think they do." He explained that logs are bought on the small end measurement and stated: "The largest log that was brought on the load of logs that I bought from John Adkins measured 20 inches at the small end. And it is not very practical for a tree to go from 30½ inches to 20 inches in diameter in nine feet of length," which was the length of the 20-inch log.

Thereupon the court asked, "Mr. Smith, can you, from the measurement of these logs and the experience you have had [which he had said was 30 years], tell whether any of these logs may have come off of a 30 inch stump?" He answered, "In my opinion they did not come off of a 30 inch stump, no, sir."

Garland Oliver, the defendant's brother-in-law, testified that the walnut logs sold to the Crozet Lumber Company were bought by him and the defendant on August 22 from James H. Tanner, in Culpeper county, and they paid him $100 for them, for which Tanner gave them a receipt, and that they hauled them the next day, August 23, to the Crozet Lumber Company and sold them to that company on that day. The defendant testified to the same effect and so did his brother, Herbert Adkins. The indictment charged that the larceny was committed on or about August 23, 1957.

Francisco testified that the defendant called him on the telephone and said that a warrant had been served on him for cutting these walnut trees and that he wanted Francisco to come to see him; that he was going to pay for the walnut trees if Francisco would drop the case; that he, defendant, was a preacher and it would ruin his reputation if he were taken into court for stealing trees. Francisco said he asked the defendant where he carried the trees and the defendant said they were taken to Crozet. Later that week Francisco, along with the sheriff, the Commonwealth's attorney and a deputy sheriff, went to see the defendant, who declined to talk to them together but took Francisco aside and again told him that the logs had been taken to the Crozet Lumber Company and were there on the yard at that time, and that he would pay Francisco any price that anybody could say the trees were worth if Francisco would drop the case, as he was a preacher and could not afford to be taken into court.

The sheriff testified that when he arrested the defendant he asked him when he sold the logs "and he told me that he sold the walnut logs in question to the Crozet Lumber Company in Crozet." It does not appear whether the words "walnut logs in question" were

the sheriff's phrase or the defendant's. The final question to the sheriff on cross-examination was: "He told you he sold walnut logs, is that correct?" and he answered, "Yes."

Francisco also testified that while the defendant and his assistants (who were his brothers Herbert and Everett, partners in the enterprise) were cutting the sycamore logs he found a McCulloch saw which they had left on a log and he took it to the store of a Mr. Hogg after writing down its serial number, and that afterwards he saw this same power saw under one of the walnut trees completely broken up. Hogg gave this saw back to the defendant a few days afterwards and later on, no date being given for these incidents, the defendant was back at his store and in response to a remark by Hogg that he, defendant, was quitting early that day, the defendant told him that they had backed the tractor over their saw and broken it all to pieces.

The deputy sheriff testified that a week or more after the warrant for the defendant had been sworn out he went into the woods with Francisco and they followed the tracks of a tractor to where the two walnut trees had been cut; that they followed the tracks on up and came to a third tree and there found a broken saw. It appeared, he said, "that the saw had been used to saw this walnut log off, and the log had fell on the saw and mashed it into the ground and broke it into 500 pieces." He said the tractor had moved all the logs up a steep bank, had stalled and made holes "almost three or four feet deep." The tracks of the tractor were very faint, he said, except at these dug out places. They went to an old logging road and thence through the land of Vernon Hicks to the main road. He conceded that the saw could have been run over by a tractor instead of being broken by the walnut tree.

Hogg, a Commonwealth witness, testified that the saw brought to his store was a one-man saw; that is, it had only one handle on it. The evidence showed, however, that the broken saw was a two-man saw. According to the evidence of the defendant and his two brothers the saw taken to Hogg's store belonged to Herbert Adkins and the broken saw belonged to Everett Adkins. They testified that this broken saw was run over by a tractor driven by Herbert Adkins; that John and Everett had taken this saw up on the hill where they expected to cut a poplar tree (they claimed the right to take poplar under the contract with Francisco); that Francisco had asked them not to use the new road he had built, so John had

taken a partly loaded truck to the old road at the top of the hill, then had come back and was taking the tractor to haul out the poplar that was to be cut and ran over the saw, which had been laid down by his brothers while they were looking for the poplar tree, and which he failed to see because of the dense brush. Vernon Hicks testified that the defendant and his brothers had asked permission to haul up the hill and through his land in order to avoid damaging Francisco's new road, and he had given them permission.

The evidence is now to be viewed, of course, in the light most favorable to the Commonwealth on the question of whether it is sufficient to warrant the verdict of guilty rendered by the jury. When so considered it fails to establish the guilt of the defendant beyond a reasonable doubt. The presumption that the defendant is innocent of the crime of grand larceny charged against him holds firm until the Commonwealth proves beyond a reasonable doubt that he stole from Francisco walnut logs having a value of $50 or more. Code § 18-164.

The defendant conceded that he had no right to take walnut timber under his contract with Francisco. He and his two brothers flatly denied that he did so.

No witness for the Commonwealth gave any facts or opinion as to when these walnut trees were cut from Francisco's land, whether recently or remotely. The Commonwealth based its case on the fact that on August 23, 1957, the defendant sold ten walnut logs to Crozet Lumber Company for $168.77. The defendant testified that neither previous to that date nor after that date did he sell any walnut logs to anybody, and nobody testified to the contrary. Francisco testified that he drove around for more than a week trying to find out where these logs were sold. He found no sale of walnut logs by the defendant other than that to the Crozet Lumber Company. Smith, the vice-president and general manager of that company, who made the purchase of the ten walnut logs from the defendant, called as a witness by the Commonwealth to prove this sale, testified that in his opinion none of these logs came off a 30-inch stump, which was the size of the stumps of the largest trees cut from Francisco's land. Nobody testified to the contrary.

If these were not logs from Francisco's land, as the Commonwealth's only witness on that point testified, then there is a total failure of proof of the value of the logs alleged to have been taken

from the Francisco land, which is an essential element of the Commonwealth's case.

Furthermore, there remain only the circumstances of the alleged admissions of the defendant and the presence of the broken saw at the place where one of the trees had stood to connect the defendant with the taking of the logs. When these incidents are carefully examined, they fall short of establishing his guilt.

The defendant did not, it is true, assert his innocence to the sheriff or his deputy or the Commonwealth's attorney when they went with Francisco to interview him. He sought to explain this on the ground that he had asked Francisco to talk the matter over with him personally and he resented his bringing the officers to that meeting. In his conversations with Francisco, one over the telephone and one in person, as related by the later, he stated that he had carried the trees to Crozet Lumber Company and they were there on the yard at that time, but he did not say he had taken them from Francisco's land. His statement to the sheriff when he was served with the warrant was at most ambiguous. He told the sheriff that he had sold walnut logs to Crozet Lumber Company. Admission of guilt is not a necessary inference from that statement. His offer to pay for the trees, as related by Francisco, included the reason that he was a preacher and could not afford to be taken into court on a stealing charge.

The fact that a power saw which the defendant and his brothers were using was found broken up near a stump of one of the trees gives rise to suspicion, but the explanation made by the three brothers that it was run over by the tractor was not incredible. The deputy sheriff said it could have happened that way. Those who steal do not ordinarily leave that type of evidence at the scene of the crime, particularly when there has been ample opportunity to remove it, as there was here.

While the evidence in this case discloses circumstances of suspicion, it does not exclude a reasonable hypothesis of innocence. It necessarily and as a matter of law leaves a reasonable doubt as to the defendant's guilt. Unless the Commonwealth has proved his guilt beyond a reasonable doubt the verdict against him cannot stand. The law has fixed that measure of proof as an indispensable requisite to depriving a citizen of his liberty. It is an important safeguard and serves as a shield to all who are charged with crime so long as a reasonable doubt as to guilt remains unremoved by the evidence

and the reasonable inferences from it. *Smith* v. *Commonwealth*, 192 Va. 453, 462, 65 S. E. 2d 528, 534; 5 Mich. Jur., Criminal Procedure, § 54, p. 400.

It is our conclusion that the evidence is insufficient to support the verdict. It is not necessary, therefore, to discuss the other assignments of error.

The judgment appealed from is reversed, the verdict of the jury is set aside, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*