## Richmond

GEORGE KENT FOSTER v. COMMONWEALTH OF VIRGINIA.

October 14, 1968.

Record No. 6686.

Present, All the Justices.

*J. Frank Shepherd* for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

The only question presented by this appeal is whether the evidence was sufficient to sustain the conviction of George Kent Foster of grand larceny. At the October term of court, 1966, defendant was indicted for larceny of certain electric coils and commutators, the property of Glamorgan Pipe and Foundry Company. A trial resulted in his conviction, and the court sentenced him to confinement in jail for twelve months and to pay a fine of $450 in accordance with the jury's verdict. The trial court refused to strike the evidence both at the conclusion of the Commonwealth's case and at the conclusion of all the evidence and refused to set aside the verdict as contrary to the law and the evidence. We granted Foster a writ of error.

Defendant had been an employee of the Glamorgan Pipe and Foundry Company of Lynchburg, Virginia for approximately 9 months prior to June, 1966. On or about the 23rd of June, 1966, James Dowdy, also an employee of Glamorgan, who had charge of electrical maintenance, received a report that certain coils and commutators were missing from the company's storeroom. The coils are described as being of various sizes and consisting of a roll of insulated copper wire which is wrapped around many times.

It developed that the company had no detailed list of the number of coils and commutators or other supplies carried in stock. However, Dowdy, after a discussion with a former foreman and coil manufacturers, was able to compile a list, and estimated that over a period of approximately 90 days prior to June 23, 1966, various items, largely coils and commutators, having a value in excess of $4000, were removed from the storeroom.

A report of the larceny was made to the Lynchburg Police Department, and Sergeant R. L. Brockman was assigned to make the investigation. Information had been received that defendant Foster had been seen at a private dump located 8 miles from Lynchburg in Campbell County. Sergeant Brockman, in the course of his investigation, went to the dump with Mr. Dowdy and a Mr. Williamson. There they found a pile of insulation material that had been removed from copper coil wire, and also some metal identification tags. Witness J. S. Harris identified the material found as the type used at Glamorgan. Dowdy identified a portion of the insulation material as material on which he had personally worked. He also identified certain metal identification tags that are attached to coils as bearing a catalog number of the General Electric Company, and as having come off of coils that were formerly at the Glamorgan plant.

Sergeant Brockman talked to Foster about the missing coils and commutators and asked him about the insulation material and tags found at the dump. Foster replied that he had bought some "copper stuff" from McDaniel-Kelly Electric Company and also from Goff Electric Company, and that he had burned the insulation from the wire at the dump. Two days later, upon being questioned again by Brockman, defendant stated that he did not buy the material from McDaniel-Kelly or Goff but from some men who worked for the two companies.

At the trial defendant testified that he purchased some coils from two men whose identity was unknown to him, but who said that they worked for McDaniel-Kelly and Goff. His statement was that he

made the purchase for $32 in the latter part of July at the Southerner Drive-in restaurant. He admitted burning the insulation off the coils at the dump, and selling the salvaged copper in Richmond for $135. He said he did not know the name or location of the company, or the individual to whom he sold the copper. His explanation for selling in Richmond, rather than in Lynchburg or Roanoke, was that he heard more was paid in Richmond for scrap copper. Defendant also testified that he had made an effort to ascertain the names of the two men who represented themselves as employed by McDaniel-Kelly and Goff but without success. Several witnesses testified that the defendant had a good reputation for truth and veracity.

George A. Williamson, employed as a supervisor by Glamorgan, testified that on June 11, 1966, he visited the dump and saw defendant there, but did not immediately recognize him. He said that Foster ". . . had his car backed up to the edge of the fill and it seemed some wire was behind the truck [sic] on the ground". Williamson did not go over to the vehicle, which he estimated to be from 90 to 100 feet away. He had no cause for suspicion at the time, and all he noted was that defendant was "throwing something into the back of the trunk". Before Williamson left the dump, Foster walked over to him, and it was only then that he recognized defendant.

Foster's explanation for being at the dump was that "he was making a dollar". He also used the occasion to question Williamson about getting a raise at the plant. Williamson made no statement to the effect that Foster was burning off insulation, or was seen anywhere in the area of the dump except immediately behind his car.

Williamson accompanied Officer Brockman to the dump about two weeks later, showed him where he (Williamson) unloaded his trash, and pointed out where he had seen defendant. He testified that they walked around the area and found the insulation material and metal tags approximately 40 to 50 feet from the point where Foster's car was parked on June 11th.

Hayden Osborne, who deals in junk, testified that he had seen Foster on several occasions during the summer of 1966 at the dump. He saw defendant burning, or attempting to burn, a bunch of copper coils, and said Foster told him he had bought the coils from a fellow for either $22 or $23. He observed that Foster did not attempt to hide anything. This witness did not accompany Officer Brockman to the dump, or show him the place where Foster was burning the coils. He did not know where the officer picked up the items that were introduced in evidence and identified as having come from Glamorgan.

In his brief defendant argues that the Commonwealth failed to prove, first, that a crime had been committed, and second, that the crime was committed by defendant.

The evidence is sufficient to establish that large quantities of coils and commutators disappeared from Glamorgan's stockroom. While there was no exact inventory of the stock, witnesses responsible for the stockroom and familiar with the items comprising the stock testified that the shrinkage or disappearance over a period of 90 days was so abnormal and so large that it did not result from normal usage by the company. They were able to reconstruct an inventory, and testified as to the disappearance of items costing in excess of $4000, and for which there could be no accounting. Furthermore, there was creditable evidence identifying the wrappings and metal tags found at the dump as those that were formerly attached to coils and commutators owned by Glamorgan and constituting a part of its stock.

The real problem this case presents is that the record fails to establish beyond a reasonable doubt that defendant ever had possession of the stolen property.

The jury could have found from the evidence that the coils and commutators were a part of the stock stored in an unlocked room and that defendant had access to this room and could have obtained the goods surreptitiously. It is also probable that others had the same access and opportunity to remove the items from the inventory.

The explanation of defendant as to the manner in which he obtained the coils that he burned at the dump is far from satisfactory. He gave the police officer two conflicting versions of his purchase. Neither is his explanation that he sold the copper to an unknown junk dealer at an unknown address in Richmond very convincing.

However, his vague and unsatisfactory explanation of the acquisition of the coils, and disposition of the copper wire he obtained therefrom, does not establish the theft of the items from Glamorgan. It raises a suspicion that they were not obtained in a normal course and from a legitimate source. But suspicion is not sufficient to connect defendant with the Glamorgan theft.

Defendant admitted to the police that he burned the insulation from the coils to obtain copper at the dump, and he testified to the same effect. When seen at the dump, he did not act furtively or attempt to conceal what he was doing. On one occasion, he identified himself to his superior and engaged him in a conversation regarding his wages. On the other occasion, he told witness Osborne that he had purchased coils from a fellow for $22 or $23. Osborne could not

identify the coils which defendant then had in his possession as having come from Glamorgan. This witness was not required to return to the dump with the investigating officer and point out the exact area where Foster was burning insulation.

Witness Dowdy did not testify that on June 11th he observed defendant burning insulation. Apparently, on the day that he saw defendant at the dump, he observed him in only two places. One was immediately back of defendant's car in which he was loading wire, and the other was by or near Dowdy's truck when defendant voluntarily came up and engaged him in conversation. Therefore, neither Dowdy, Osborne, nor any other witness in the case, ever placed Foster at the point where Glamorgan's insulation and tags were found, and where presumably there had been a fire.

To summarize, the evidence discloses that a large number of coils and commutators were missing from the stockroom of Glamorgan; that the theft is believed to have occurred over a period of approximately 90 days prior to its discovery; that at a dump, described as being as large as a city block and frequented by numerous people, some insulation material and metal tags were discovered and identified as having been attached to coils taken from Glamorgan; that the defendant was seen at this dump on several occasions, once loading unidentified wire in the back of his vehicle and once burning insulation from unidentified coils; that the defendant was employed by Glamorgan and had access to the storeroom of the company; and that defendant's explanation of his purchase of certain coils which he had in his possession, and of his sale of copper wire obtained therefrom, is unsatisfactory.

Assuming proper identification of the insulation and tags as being formerly attached to Glamorgan property, the nearest point that Williamson places the defendant to the area in the dump where these items were found is 40 feet.

While the evidence in this case is sufficient to raise a strong suspicion of guilt, we cannot say that it is wholly inconsistent with the innocence of defendant.

In *Smith* v. *Commonwealth*, 192 Va. 453, 461, 462, 65 S. E. 2d 528, 533, we said:

"It is, of course, a truism of the criminal law that evidence is not sufficient to support a conviction if it engenders only a suspicion or even a probability of guilt. Conviction cannot rest upon conjecture. The evidence must be such that it excludes every reasonable hypothesis of innocence. The giving by the accused of an un-

clear or unreasonable or false explanation of his conduct or account of his doings are matters for the jury to consider, but they do not shift from the Commonwealth the ultimate burden of proving by the facts or the circumstances, or both, that beyond all reasonable doubt the defendant committed the crime charged against him. [Citing cases.]"

We have accorded the verdict of the jury, approved by the trial judge, the great weight it is entitled to have. As we have said about defendants in other cases, it is possible, or it may be probable, that this defendant is guilty, but we are unable to find in this record evidence sufficient to warrant the conclusion that beyond a reasonable doubt he is the person who committed the larceny of the coils and commutators from Glamorgan. The law has fixed that measure of proof as an indispensable requisite to depriving a citizen of his liberty. *Adkins* v. *Commonwealth*, 200 Va. 238, 105 S. E. 2d 164.

The judgment appealed from is reversed, the verdict of the jury is set aside, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*