## Richmond

SYLVESTER PERCELL MINOR

v.

COMMONWEALTH OF VIRGINIA

No. 0673-86-2

Decided May 17, 1988

COUNSEL

David E. Boone (Boone, Beale, Cosby & Hyder, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**HODGES, J.**—Sylvester Minor was convicted at a bench trial of possession of cocaine with intent to distribute in violation of Code § 18.2-248. He was tried jointly with co-defendants Michael Minor, James Brown, and Anthony Reese. The court fined Minor $3,500 and sentenced him to twenty-five years in the penitentiary with ten years suspended. On appeal, he argues that the Commonwealth's evidence was insufficient to sustain his conviction and that it was error to admit into evidence the money found in his possession. We disagree and affirm the conviction.

On the evening of November 19, 1985, the Richmond police executed a search warrant at the residence of the appellant and his brother, Michael Minor. The police gained entry into the residence when a black male, later identified as Calvin Brake, opened the front door to exit. He attempted to close it when he saw the police, but Detective Fleming forced open the door and entered, followed by Detectives Clavert, Clark, and Robinson. They identified themselves as the police upon entry.

Detective Fleming chased Brake down the hallway. As Fleming passed the entrance to the master bedroom, which was Michael Minor's, he paused and glanced into the lit room to check for weapons. He observed the appellant seated at the head of the bed, his brother at the foot of the bed, and James Brown seated between the two on a stool next to the bed. In the center of them on the bed, there was a mirror with white powder on it and there was a scale on a speaker next to the bed. All three defendants were

seated within arm's reach of each other and of the cocaine on the bed.

Not seeing any weapons, Fleming proceeded into the den after Brake. Anthony Reese was in the den where Fleming found twelve packs of cocaine, which were packaged in the customary way for street distribution. When Fleming returned to the bedroom about a minute later, everyone had moved and other detectives were present. In addition to the mirror and scales, the following items were seized in the room: two pounds of cocaine on the bed with an approximate value of $45,000, a strainer with residue in it, containers of commonly used cutting agents, a box of plastic baggies, blue twist ties, scissors, plastic tooters, spoons with residue on them, and $60 on the night stand.

As Detective Clavert, who followed Fleming into the residence, reached the master bedroom, Brown and Michael Minor were exiting from it. Clavert detained them there. Although he did not actually enter the bedroom, he did not recall seeing the appellant at that time. Detective Clark entered the residence next. He apprehended Brake, who was leaving the den, in the hallway. He observed Brown, Michael Minor, and the appellant in the bedroom with Detective Clavert at that time.

After waiving his rights, the appellant informed the police that his bedroom was upstairs and that he was coming downstairs to leave for work when he was pushed into the master bedroom by the police. He stated that he did not know how long cocaine was sold from the house because his brother kept it from him.

The police found two hundred and sixteen dollars on the appellant. No drugs were found in the appellant's room.

## I. SUFFICIENCY OF THE EVIDENCE

Challenging the sufficiency of the evidence, appellant contends that the Commonwealth failed to prove he was present in the master bedroom. The appellant's contention rests on a narrow interpretation of Detective Fleming's and Detective Clavert's testimony. The Commonwealth does not place the same significance on Fleming's language, nor does it find the two detectives' testimony contradictory. We agree and find the evidence sufficient to establish the appellant's guilt beyond a reasonable doubt.

■ Where the sufficiency of the evidence is raised on appeal, the court must consider the evidence in the light most favorable to the Commonwealth, giving to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); *Hambury v. Commonwealth*, 3 Va. App. 435, 437, 350 S.E.2d 524, 524 (1986). Furthermore, the "judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Hambury*, 3 Va. App. at 437, 350 S.E.2d at 524 (citing Code § 8.01-680; *Evans v. Commonwealth*, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975)).

The pertinent portions of Detective Fleming's testimony at trial follow:

### Direct Examination

Q: What happened at the front of the house?

A: I stood right beside the front door, and I could hear conversation in the, coming from a window, which was the bedroom that the Minors and Mr. Brown were in. After standing beside the door for just a few minutes, a black male, Calvin Brake, started out of the house. As he started to come out of the door, he spotted me, pulled the storm door shut and tried to close the front door. I pulled open the storm door and forced in the front door. Calvin Brake was chased to a rear bedroom. While in chasing him, we passed by the bedroom where the Minors were and Mr. Brown. I stopped momentarily there to just glance in the room to make sure no one had any weapons or anything, just for my own safety, and then continued on in pursuit of Mr. Brake.

Q: Where were the individuals located in the master bedroom?

A: Michael Minor was seated at the foot of the bed; Sylvester Minor, as best I can recall, was at the head of the bed; and Mr. Brown was in a chair stool between the two.

\* \* \* \*

### Cross-Examination

Q: Where was Mr. Brown sitting?

A: From the best of my recollection, he was on a chair stool right there at the side of the bed, within a foot or so of the bed.

Q: Mr. Mike Minor, you testified—

A: He was at the foot of the bed, sitting on the bed.

Q: And Sylvester?

A: Best I can recall he was at the head of the bed, near the pillow.

The appellant's interpretation of Detective Fleming's language "best I can recall" when referring to him is crucial to his argument. Appellant asserts that Detective Fleming uses this equivocal language both times when referring to him, yet he is explicit when referring to the others in the room. From the location of the phrase in the sentence, appellant infers that Detective Fleming was unsure about his presence, not his location, in the bedroom. When considering Fleming's testimony with Detective Clavert's testimony that he did not recall seeing Sylvester Minor in the master bedroom when he detained Brown and Michael Minor, appellant argues that the Commonwealth failed to prove his presence in the bedroom.

We find no merit in the appellant's position. A review of the record reveals that the appellant focuses on specific language in Detective Fleming's testimony while clearly ignoring the questions posed to him.[1] Both times Fleming was asked about the appellant, he was questioned about Minor's location, not his presence, in the bedroom. Fleming previously testified that before entering the house, he was standing beside the window to the bedroom where the Minors and Mr. Brown were. Then he stated that he passed

---

[1] In addition, appellant erroneously claims that Fleming only used language like "best I can recall" when referring to him. When asked on cross-examination where Brown was sitting, Fleming prefaced his answer with "[f]rom the best of my recollection."

the bedroom occupied by the Minors and Mr. Brown while chasing Brake down the hallway. Detective Fleming's testimony clearly and unequivocally places Sylvester Minor in the bedroom.

Furthermore, when viewing Detective Clavert's testimony in a light most favorable to the Commonwealth, his testimony does not conflict with Fleming's. He merely states that he did not recall seeing the appellant when he stopped the two co-defendants as they were exiting the room. We also disagree with the appellant's contention that Clavert was in a better position to determine who was in the bedroom. Detective Fleming was the first police officer to enter the house and he reached the entrance to the master bedroom in a matter of seconds while the occupants were still seated in the bedroom. Therefore, he was in a superior position to determine who occupied the room.

In finding Sylvester Minor guilty, the trial judge commented on the credibility of the witnesses. Judge Wright stated, "I find the Commonwealth's witnesses to be credible. In particular, Detective Fleming. I believe his testimony to the effect that the three defendants, Michael Minor, Sylvester Minor and James Brown were seated around that bed where the cocaine was being cut."

■ "[T]he finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed." *Speight v. Commonwealth*, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (quoting *Lane v. Commonwealth*, 184 Va. 603, 611, 35 S.E.2d 749, 752 (1945)).

Assuming arguendo that his presence in the bedroom was proven, appellant contends that the evidence establishes only mere proximity to the drugs which is not sufficient for a conviction. *See Drew v. Commonwealth*, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986). Appellant analogizes the facts of this case to those in *Drew* where the police executed a search warrant at Drew's residence and found cocaine and drug paraphernalia in several places throughout the house. Although Drew was not present, the police found documents in the living room which showed the residence as his current address. When the police entered the residence, they observed the defendant standing in the street several houses down. The court found the evidence was insufficient to prove constructive

possession, noting that the record lacked evidence of any statements or conduct of the defendant which showed he was aware of the presence of drugs. Furthermore, the only evidence of the defendant's dominion and control over the drugs was the documents showing the residence as Drew's. In the present case, the appellant emphasizes the absence of any act or declaration on his part to prove the drugs were subject to his dominion and control.

*Drew* is clearly distinguishable on the facts. In *Drew*, the police observed twenty-two people enter and leave the defendant's residence in an hour. When the police executed a search warrant, the defendant was not present. Furthermore, there was no proof that he was in the residence earlier. In the present case, however, the evidence reveals more than the mere presence of the appellant in the house when the search occurred. He was seated on the bed where the drugs were found, and he was within arms reach of the drugs and other drug paraphernalia.

Accordingly, we find the evidence sufficient to sustain the appellant's conviction.

## II. ADMISSIBILITY OF EVIDENCE

■ Appellant also contends that the trial court erred in admitting into evidence the $216 found on his person because the Commonwealth did not introduce any evidence to show the money was gained through the illegal sale of drugs. The money, however, was properly admitted as circumstantial evidence of an intent to distribute. *See Colbert v. Commonwealth*, 219 Va. 1, 4, 244 S.E.2d 748, 749 (1978). "Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted." *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

Moon, J., concurred.

Benton, J., dissenting.

In order to convict the appellant, Sylvester P. Minor, the Commonwealth had the burden of proving beyond a reasonable doubt that he possessed cocaine with intent to distribute. Accordingly, the Commonwealth attempted to establish at trial that the appellant was aware of the presence and character of the cocaine and that the cocaine was subject to his dominion and control. *See Drew v. Commonwealth*, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986); *Powers v. Commonwealth*, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). The Commonwealth relied upon the testimony of Detective Fleming to place appellant in the room where the cocaine was discovered. I dissent from the majority opinion's conclusions that the evidence places appellant in the room and, thus, in a position to be aware of and able to exercise control over the openly displayed cocaine.

The Due Process clause protects an accused from a conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see Foster v. Commonwealth*, 209 Va. 326, 330-31, 163 S.E.2d 601, 604 (1968). When the question of the sufficiency of the evidence is raised on appellate review, we must determine whether a reasonable fact finder could find from the evidence before it that guilt had been proved beyond a reasonable doubt. Reasonable doubt is one " 'based on reason which arises from the evidence or lack of evidence.' " *Johnson v. Louisiana*, 406 U.S. 356, 360 (1972).

It is well settled in Virginia that to justify conviction of a crime, it is not sufficient to create a suspicion or probability of guilt, but the evidence must establish the guilt of an accused beyond a reasonable doubt. It must exclude every reasonable hypothesis except that of guilt. The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.

*Cameron v. Commonwealth*, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970)(citations omitted).

As an appellate court, we review the evidence in the light most favorable to the Commonwealth in order to give deference to the

function of the trier of fact in weighing the evidence, *Allen v. Commonwealth*, 211 Va. 805, 807, 180 S.E.2d 513 (1971), and we grant to that evidence "all reasonable inferences fairly deducible therefrom." *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). However, in so doing, we do not abandon our obligation to scrutinize whether the evidence, so viewed, rationally supports the verdict of guilt beyond a reasonable doubt. "[W]here the evidence leaves it indefinite which of several hypotheses is true, or establishes only some finite probability in favor of one hypothesis, such evidence cannot amount to proof [beyond a reasonable doubt], however great the probability may be." *Massie v. Commonwealth*, 140 Va. 557, 565, 125 S.E. 146, 148 (1924). Measured by these standards, the evidence in this case is insufficient to sustain the conviction.

The evidence, viewed in the light most favorable to the Commonwealth, establishes that Detectives Fleming, Clavert, Clark, and Robinson were at the front door of the residence armed with a search warrant. Detective Carter and two other officers watched the back door. The front entrance to the house had both a storm door and a front door interior to the storm door. As someone inside the residence opened the interior front door to leave, Detective Fleming forced open the storm door within one or two seconds.

Fleming was first to enter the residence and ran down a hallway. He testified that he chased a man, who he identified as Calvin Brake, down the hall to the "rear bedroom" of the house, passing the master bedroom. He did not notice the stairwell as he went by it. Fleming testified that he stopped for his own safety at the door to the master bedroom "[j]ust for a split second." He testified that "Michael Minor was seated at the foot of the bed; Sylvester Minor, *as best I can recall*, was at the head of the bed; and Mr. Brown was in a chair stool between the two."

He stated that he then continued his pursuit of Brake. Once Brake got inside the "den," Brake ran to the right. Fleming then saw Anthony Reese rising out of a chair in the den. Reese turned around, his hands on the back of the chair, and returned to his seat. Fleming went over, saw a plastic pack with powder on the floor behind Reese's chair, and secured Reese.

Clavert, who was immediately behind Fleming, did not know who came to the front door as they rushed in because "[e]verything happened so quickly." He testified that the "front door was opened . . . Detective Fleming ran in [and] I was right behind him, and the party who opened the door ran back inside." Clavert did not see who was in front of Fleming. Although he was "on [Fleming's] tail" and close enough to touch him, he could not "tell . . . if [Fleming] stopped [at the bedroom door] or not." Clavert ran into the master bedroom where he met James Brown and Michael Minor at the door of the master bedroom, attempting to exit the room. Clavert stopped them at the door and put them aginst the wall. Clavert was able to see the entire bedroom and could not recall seeing anyone else in the room. He did not see the appellant in the room and did not initially detain him.

Detective Clark ran into the house immediately behind Clavert. He testified that he ran down the hallway behind Fleming and Clavert and, within three or four seconds of his entry into the house, "took control" of Brake, without assistance, in the hallway between the master bedroom and the den. Clark testified that "[i]t seemed . . . that [Brake] was coming from the den." Clark saw Fleming go into the den to apprehend Reese, and he saw Clavert, who was immediately in front of him, go into the master bedroom. Clark stated that he "had a hold of . . . Brake in the hallway" and that Detective Robinson, who was behind him, passed him and went into the den.

Detective Robinson testified that he ran down the hallway behind Clark and continued into the den. He saw Fleming in the den with custody of one man. He further testified that he saw another individual, whom he described as Brake, standing alone near a sofa. He "grabbed Brake and sat him down on the sofa" after he "patted [Brake] down."

Fleming returned to the master bedroom approximately a minute after he first passed it and after apprehending Reese. When he returned to the master bedroom the other officers and occupants of the house were there, including the appellant.

None of the officers testified that he initially apprehended or detained the appellant. None of the testimony establishes where the appellant initially was apprehended or detained. Moreover, Fleming's testimony, which the Commonwealth relies upon to es-

tablish appellant's guilt through presence in the master bedroom, is ambiguous and, if viewed through the gloss painted by the majority opinion, is contrary to the credible facts.

Fleming was very specific in his testimony that Michael Minor and James Brown were in the master bedroom. However, when responding concerning the appellant, he consistently qualified his testimony with "as best I can recall." The majority opinion suggests that Fleming was only uncertain as to appellant's precise location in the room. On the contrary, the facts undisputably suggest that his recollection was obviously incorrect regarding the appellant's presence in the room. Only five persons were in the house at the time of the raid. Fleming apprehended Reese in the den. Clavert apprehended Michael Minor and Brown in the master bedroom and did not recall seeing appellant in the bedroom. Although Clark testified that he apprehended Brake in the hallway between the master bedroom and the den, the evidence also establishes (1) that Brake ran into the den to escape Fleming's pursuit and (2) that Robinson apprehended Brake in the den. Not one of the detectives testified that he apprehended the appellant. The reasonable inference that flows from this evidence is that either Robinson or Clark apprehended appellant. In either of those events, the appellant was not in the room with the narcotics.

Furthermore, if the appellant was in the bedroom, it defies reason to believe that Clavert, who was "on [Fleming's] tail" and close enough to touch him, did not see appellant. Clavert ran into the master bedroom to secure it and its occupants. It also defies logic to conclude that Clavert, concerned about his safety during a drug raid, would not be aware of the presence of a third person in the room as he apprended and detained two others.

The appellant resided with his brother, Michael Minor, in the house. The evidence established that appellant's brother occupied the master bedroom where the officers found cocaine on the bed and that appellant occupied the upstairs bedroom in which the officers found no cocaine or other contraband. At the police station later that night appellant informed the police as follows:

Question: How long were you in the room where all the cocaine was found?

Answer: When they come in the front door, that's when they pushed me back into the room. I was coming down the stairs going to work. And then that's when he came in the door and pushed me back into the room.

This evidence, together with the testimony of the other Commonwealth's witnesses, conclusively establishes that appellant could not have been in that room when Fleming first glanced in. The only evidence that contradicts this explanation for appellant's presence near the area in which the cocaine was found is Fleming's testimony—"as best [he] can recall." Thus, only a scintilla of evidence conceivably supports the Commonwealth's theory that appellant was in the room when Fleming momentarily glanced in the room. The Commonwealth's obligation to prove appellant's guilt beyond a reasonable doubt cannot be supported by such a slender thread.

In failing to prove beyond a reasonable doubt that appellant was in the master bedroom, the evidence does not otherwise establish that appellant was aware of the presence and character of the cocaine and that he intentionally and consciously possessed it or exercised dominion and control over it. *See Drew*, 230 Va. at 473, 338 S.E.2d at 845; *Powers*, 227 Va. at 476, 316 S.E.2d at 740. No presumption arises from the ownership or occupancy of the residence where the drugs were found. Code § 18.2-250; *Gillis v. Commonwealth*, 215 Va. 298, 301, 208 S.E.2d 768, 770-71 (1974).

For these reasons, I would reverse the conviction and dismiss the indictment.