COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Agee
Argued at Alexandria, Virginia


LOUIS SCOTT HUDSON

MEMORANDUM OPINION[*] BY
v.    Record No. 0917-01-4    JUDGE G. STEVEN AGEE
JULY 16, 2002

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CLARKE COUNTY
John R. Prosser, Judge

Timothy S. Coyne (Fowler, Griffin, Coyne,
Coyne & Patton, P.C., on briefs), for
appellant.

Virginia B. Theisen, Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.



Louis Scott Hudson (Hudson) was convicted by a Clarke

County Circuit Court jury of the second-degree murder of his

wife, Mary Donovan Hudson (Mrs. Hudson), in violation of Code

§ 18.2-32, and of using a firearm in the commission of a murder,

in violation of Code § 18.2-53.1. He was sentenced to twelve

years incarceration on the murder conviction and three years on

the firearm conviction with the sentences running consecutively.

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal, he contends the trial court erred by denying his motion to set aside the verdict due to insufficient evidence.[1] For the following reasons, we reverse Hudson's convictions.

## I.   BACKGROUND

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, only those facts necessary to a disposition of this appeal are recited.

On the day of her death,[2] September 20, 1999, Mrs. Hudson spent the morning fox hunting and attended her father's funeral service with Hudson that afternoon.  At home after the funeral, Mrs. Hudson was talking on the telephone with a friend, Wes Thompson.  According to Thompson, Hudson interrupted the call by speaking directly to Thompson and calling him a "son of a bitch mother fucker."  Hudson demanded to know why Thompson was

---

[1] Hudson also contends the trial court erred by (1) denying his motion to suppress evidence gathered subsequent to his arrest for public intoxication; (2) admitting DNA evidence despite the Commonwealth's failure to comply with the notice requirements of Code § 19.2-270.5; and (3) failing to instruct the jury on suicide and accidental death.  Because we find the evidence insufficient to sustain Hudson's second-degree murder conviction, we do not address these additional issues.

[2] The defense presented the following evidence:  there was no history of abuse between the couple; Mrs. Hudson overdosed on prescription drugs a few weeks prior to her death; her blood alcohol content at the time of her death was between .22 and .24; and an autopsy revealed a prescription drug in her system at the time of her death.

-

talking to his wife, and Thompson hung up.  Hudson denied he talked to Thompson.

Later that evening, Hudson called his father's house and told his mother that Mrs. Hudson had shot herself.  He did not call 911, seek medical help or notify the police.  Hudson's parents went to the house and observed Mrs. Hudson's prone body, but testified that they did not touch it.  Hudson was not present when his parents arrived.  Hudson's father then called 911 to report the shooting.

In response, Clarke County Sheriff's Deputies arrived at Hudson's home around 8:00 p.m. and discovered it was in disarray and Hudson was not there.  Deputy Jones saw Mrs. Hudson's body lying on the living room couch with a .22 caliber pistol awkwardly positioned in her right hand, essentially facing backwards.  There was a bloody handprint on the back cushion of the couch.  However, the deceased did not appear to have blood on her hands.

At 9:17 p.m., the Sheriff's Department received a call from Hudson's father informing them that his son was at the father's house, a few miles away from the investigation scene.

Deputy Small arrived first, and Hudson's father advised him to wait for backup.  Deputy Jones and Investigator Roper arrived a short time later.  The three officers entered the house and found Hudson seated in his father's living room, holding a cup of coffee.  Hudson was extremely intoxicated.  Hudson's father

-

told the officers that he did not want Hudson in his home and asked the officers to remove him. Deputy Jones informed Hudson that he was being arrested for being drunk in public.[3]

Hudson was taken to the Sheriff's Department, where a .22 caliber bullet was discovered in his coat pocket during a pat-down search. Shortly thereafter, a gunshot residue test was administered, but no warrant was obtained for the test. Later that night, Investigator Roper did obtain a search warrant for Hudson's clothes. The next morning, at 6:30 a.m., the investigator met with Hudson at the jail and gave Hudson the Miranda warnings. Hudson then provided Investigator Roper with a statement.

Hudson stated that his wife had been unhappy because she thought that she deserved more from her father's estate. According to Hudson, his wife picked up the gun and began playing with it. Hudson said that he told her not to do so. Hudson said he went to the bathroom and while there, heard a shot. He returned, and he saw his wife "slumping over" on the couch. He said he left and went to his father's house. He stated that he "never got close to" Mrs. Hudson's body. Hudson did not know why he failed to call 911 and did not remember calling anyone after the shooting. When asked to explain the

---

[3] In district court, months later, Hudson pled guilty to the charge of public intoxication.

-

.22 caliber bullet found in his pocket, Hudson said that he must have picked it up with loose change from his dresser.

Hudson gave a second statement on November 18, 1999, to Investigator Gregg of the Virginia State Police in the presence of his attorney.  In that statement, Hudson said that on September 20, 1999, he and his wife were drinking at their home and his wife was upset because she was not permitted to use money in her trust fund to purchase a truck.  He said that his wife pulled out a gun, began playing with it, and said that she was going to shoot herself.

Hudson said that he went into the bathroom and heard a shot.  When he came out of the bathroom he saw a "little bit" of blood around his wife's eyes.  He repeatedly denied going near her body.

Hudson denied handling any firearm that night.  He said he last touched a firearm two nights prior to his wife's death.  He could not account for his whereabouts between the time of the shooting and the time he arrived at his father's, a period of more than an hour.  According to Hudson, neither he nor his wife made or received any telephone calls that night.

At trial, the medical examiner testified that Mrs. Hudson suffered a contact range wound to the head and that the bullet entered her head at the left ear and went through to her brain. The medical examiner opined that death occurred within minutes. A firearms expert testified that it was necessary to cock the

-

hammer back on the pistol found in Mrs. Hudson's hand before firing the weapon. A ballistics expert testified that he had determined that the bullet recovered from the deceased's brain was fired from the .22 revolver found in her hand. The evidence further proved that at the time of death Mrs. Hudson's blood had an ethanol concentration of .22% by weight volume; her blood also contained Darvon and Diphenhydramine.

An expert in gunshot residue testified that both of Hudson's hands showed primer residue. Hudson's wife also had residue on her right hand. The expert tested .22 shells and shell casings recovered at the scene and testified these contained only lead and barium, but not antimony. The expert testified that the residue on Hudson's hands contained three elements: barium, lead and antimony. However, the residue on the deceased's hands contained only lead and barium, which was consistent with the .22 shells tested. The expert opined that it was not likely that the residue on Hudson's hands came from firing the ammunition that killed the deceased.

An expert in blood splatters also testified at trial. She identified bloody contact stains on the couch cushion, the left front thigh of the deceased's jeans and on her forearm. The expert testified that the contact transfers came from heavily-bloody hands, but not the deceased's hands, because no blood was visible on her hands.

-

Forensic scientist Carol Palmer testified that a spot of blood on Hudson's seized shirtsleeve matched his wife's blood. DNA testing showed that the possibility that the blood came from anyone other than the deceased was one in 51 million.

## II. ANALYSIS

On appeal, Hudson contends the evidence was insufficient to convict him of second-degree murder. For the following reasons we agree and reverse his conviction.

> "Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Snow v. Commonwealth, 33 Va. App. 766, 774, 537 S.E.2d 6, 10 (2000).

"It is essential in every prosecution for the commission of a homicide that the Commonwealth prove the corpus delicti." Lane v. Commonwealth, 219 Va. 509, 514, 248 S.E.2d 781, 783 (1978). "To establish the corpus delicti in a homicide, the Commonwealth must prove the victim's death resulted from the criminal act or agency of another person." Betancourt v. Commonwealth, 26 Va. App. 363, 373, 494 S.E.2d 873, 878 (1998). Further, to convict a defendant of second-degree murder, the Commonwealth must prove the defendant acted with malice. Lynn

-

v. Commonwealth, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998) (defining second-degree murder as the "malicious killing" of another person).

In this case, the Commonwealth relies upon circumstantial evidence to support its theory that Hudson maliciously killed his wife.  When a conviction is based entirely upon circumstantial evidence, we are guided by the following standards in our review:

> [W]ell established principles apply to testing the sufficiency of circumstantial evidence.  [The Supreme Court has] summarized those principles as follows:
>
> ". . . [I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence.  They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt.  To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty . . . ."
>
> But, circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty.  The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction.

<u>Clodfelter v. Commonwealth</u>, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977) (citations omitted).

We hold that the Commonwealth's evidence fails to exclude all reasonable hypotheses of innocence. Hudson argues that Mrs. Hudson did not die through the criminal agency of another. He contends the evidence failed to exclude the reasonable conclusion that Mrs. Hudson was fatally shot by accident or intentionally by her own act. There is evidence to support this hypothesis of innocence. The .22 revolver that fired the fatal shot was found in Mrs. Hudson's hand. The expert evidence demonstrated that the gunshot residue found on Mrs. Hudson's right hand was consistent with the .22 shells at the scene. The gunshot residue evidence further showed the residue found on Hudson's hands was not consistent with that ammunition. In addition, there were no identifiable fingerprints found on the .22 revolver or any of the cartridges attributable to Hudson. There is simply no evidence establishing Hudson ever touched the weapon that fired the fatal bullet. Yet there is some evidence that Mrs. Hudson may have fatally fired the gun.

Thus, this evidence is not inconsistent with the hypothesis that Mrs. Hudson fatally shot herself purposefully or accidentally. Where the facts are "equally susceptible of two interpretations, one of which is consistent with the innocence of the accused, the jury cannot arbitrarily adopt the interpretation which incriminates [the accused]." <u>Massie v.</u>

-

Commonwealth, 140 Va. 557, 564, 125 S.E. 146, 148 (1924).  There

is not adequate evidence in the record that negates the

hypothesis that Mrs. Hudson shot herself or, conversely, that

puts the revolver in Hudson's hands.  In this case, there simply

is insufficient evidence to prove Hudson committed murder beyond

a reasonable doubt.  We, therefore, must reverse Hudson's

conviction for second-degree murder.

> Proof by circumstantial evidence "is not
> sufficient . . . if it engenders only a
> suspicion or even a probability of guilt.
> Conviction cannot rest upon conjecture."
> Littlejohn v. Commonwealth, 24 Va. App. 401,
> 414, 482 S.E.2d 853, 859 (1997) (citing Hyde
> v. Commonwealth, 217 Va. 950, 955, 234
> S.E.2d 74, 78 (1977)).  "'[A]ll necessary
> circumstances proved must be consistent with
> guilt and inconsistent with innocence and
> exclude every reasonable hypothesis of
> innocence.'"  Stover v. Commonwealth, 222
> Va. 618, 623, 283 S.E.2d 194, 196 (1981)
> (quoting Inge v. Commonwealth, 217 Va. 360,
> 366, 228 S.E.2d 563, 567 (1976)).  "When,
> from the circumstantial evidence, 'it is
> just as likely, if not more likely,' that a
> 'reasonable hypothesis of innocence'
> explains the accused's conduct, the evidence
> cannot be said to rise to the level of proof
> beyond a reasonable doubt."  Littlejohn, 24
> Va. App. at 414, 482 S.E.2d at 859 (quoting
> Haywood v. Commonwealth, 20 Va. App. 562,
> 567-68, 458 S.E.2d 606, 609 (1995)).  The
> Commonwealth need not "exclude every
> possible theory or surmise," but it must
> exclude those hypotheses "which flow from
> the evidence itself."  Cantrell v.
> Commonwealth, 7 Va. App. 269, 289-90, 373
> S.E.2d 328, 338-39 (1988) (citations
> omitted).  The evidence in the instant case
> fails to prove appellant's guilt beyond a
> reasonable doubt.

Betancourt, 26 Va. App. at 373-74, 494 S.E.2d at 878.

-

Because the evidence fails to sufficiently establish that Hudson killed his wife, we must also reverse the conviction under Code § 18.2-53.1 for using a firearm in the commission of a murder.  See Gray v. Commonwealth, 28 Va. App. 227, 503 S.E.2d 252 (1998) (a finding that a defendant is guilty beyond a reasonable doubt of murder is a necessary element of the Code § 18.2-53.1 firearm offense).

Accordingly, we reverse the convictions and dismiss the indictments.

                              Reversed and dismissed.